Kenneth and Karen
ROTHSCHILD, Plaintiffs,

v.

Charles GROTTENTHALER, Superintendent of the Ramapo Central School District, and Ramapo Central School District, Defendants.

No. 89 Civ. 2992 (GLG).

United States District Court,
S.D. New York.

Nov. 29, 1989.

National Ass'n for the Deaf Legal Defense Fund, Washington, D.C. (Marc P. Charmatz, Sarah S. Geer, of counsel), Protection and Advocacy Legal Unit Westchester Independent Living Center, White Plains, N.Y. (Ben Arai, of counsel), for plaintiffs.

Coral Ortenberg Mayer Zeck & Prier, P.C., Suffern, N.Y. (Ruben Ortenberg, of counsel), D'Amato & Lynch, New York City (Bill V. Kakoullis, of counsel), for defendants.

DECISION

GOETTEL, District Judge:

On July 12, 1989, we ruled on the defendants' motion to dismiss the complaint, holding, in part, that the plaintiffs were "otherwise qualified" handicapped persons within the meaning of section 504 of the Rehabilitation Act to the extent they desired to participate in "school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education." *Rothschild v. Grottenthaler*, 716 F.Supp. 796, 800 (S.D.N.Y.1989). With this holding in mind, we issue this decision after a trial on stipulated facts.

I. STIPULATED FACTS

The parties' stipulation of agreed facts may be summarized as follows. Kenneth and Karen Rothschild are the parents of two children enrolled in the public schools of the Ramapo Central School District (the "district" or "school district"). Mr. and Mrs. Rothschild are deaf and use American Sign Language as their primary method of communication. Mr. and Mrs. Rothschild's children have normal hearing. As parents of children enrolled in the public school, the

plaintiffs have been invited to meet with teachers and school administrators from time to time concerning their children's programs and to participate in various school functions. Although the plaintiffs repeatedly asked the defendants to provide them with qualified sign-language interpreter services at such meetings, these requests have been denied. Specifically, the school district refuses to provide and pay for qualified sign-language interpreters to assist Mr. and Mrs. Rothschild in communicating with school district teachers and counselors to discuss their children's academic program, disciplinary problems, or other matters. The district also refuses to provide and pay for such services for group meetings and school events in which the Rothschilds are invited or required to participate.

As a result of the defendant's refusal, the plaintiffs claim that they either have not attended some school events or have retained a sign-language interpreter at their own expense. The plaintiffs' expenditures for these services since their children have been enrolled in the school district total $2000.00 through the 1988–1989 academic year. The school district has refused to pay the bills submitted by or on behalf of the Rothschilds.

The plaintiffs contend that, although they are eligible to attend meetings, conferences, and other functions, they cannot communicate effectively with school district personnel without a sign-language interpreter. Thus, the plaintiffs contend that the opportunity they are afforded to participate in school programs is not equal to the opportunity afforded to others and their ability to consult with school district personnel concerning their children is not as effective as the opportunities provided to non-handicapped parents. The Rothschilds claim, therefore, that they are being denied equal access to services offered by the school in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the Civil Rights Act, 42 U.S.C. § 1983. The plaintiffs seek declaratory, injunctive and monetary relief.

The defendants contend that, although they have refused to provide and pay for sign-language interpreters, they have facilitated the plaintiffs by making special arrangements for seating of plaintiffs and an interpreter provided and paid for by the plaintiffs. The defendants base their refusal to provide interpreter services on their contention that section 504 of the Rehabilitation Act of 1973 does not apply to deaf parents of normal hearing children.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The defendants' initial contention that this court lacks subject matter jurisdiction because the plaintiffs are not "otherwise qualified" individuals within the meaning of section 504 of the Rehabilitation Act was squarely rejected by this court in our prior decision. In light of the lengthy analysis conducted in that decision, *Rothschild v. Grottenthaler*, 716 F.Supp. 796, 798–800 (S.D.N.Y.1989), we need not reiterate our holding herein. Suffice it to say that

> [w]here the services in which the parents seek to participate ... are school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education, as they are in this case, we think it clear that the parents are entitled to participate to the same extent as non-handicapped parents. In sum, we are convinced that the plaintiffs are otherwise qualified to take part in the parent-teacher programs in which they seek to participate.

*Id.* at 800. The next issue, therefore, is whether the conduct of the defendants in refusing to provide sign-language interpreter services to the plaintiffs under the circumstances delineated above violates the Rehabilitation Act and/or the Civil Rights Act.

### B. Meaningful Access

"An otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985). There is little doubt that section

504 of the Rehabilitation Act requires a federally financed institution to take some affirmative action to accommodate the handicapped. *Dopico v. Goldschmidt,* 687 F.2d 644, 652 (2d Cir.1982). Defining meaningful access with respect to the needs of a deaf individual, however, is a difficult task that has not been heretofore attempted by the courts of this circuit.

Instructive in this respect are the regulations promulgated under section 504 of the Rehabilitation Act by the Department of Education. In no less than three places, the regulations define reasonable access as including the provision of a sign-language interpreter for a deaf individual otherwise qualified to participate in a service. *See* 34 C.F.R. § 104.12(b)(2) (1986) (With regard to employment practices, "[r]easonable accommodation may include ... the provision of readers or interpreters."); 34 C.F.R. § 104.44(d)(2) (1986) (With regard to postsecondary education, "[a]uxiliary aids may include taped texts, interpreters or other effective methods of making orally delivered materials available to students with hearing impairments."); 34 C.F.R. § 104.52(d)(3) (1986) (With regard to health, welfare and other social services, "auxiliary aids may include ... interpreters, and other aids for persons with impaired hearing."). Thus, the regulations promulgated under section 504 of the Rehabilitation Act apparently contemplate the inclusion of sign-language interpreters within the definition of "meaningful access."

The plaintiffs cite four cases in which the federal courts have ruled on whether the Rehabilitation Act requires the provision of sign-language interpreters for the hearing impaired. Each of these cases determined that such services were within the requirements of section 504 of the Rehabilitation Act. *See Jones v. Illinois Dep't of Rehabilitation Serv.,* 689 F.2d 724, 728 (7th Cir.1982) (Illinois Department of Rehabilitation Services required to provide sign-language interpreter to deaf college student); *Camenisch v. University of Texas,* 616 F.2d 127, 133 (5th Cir.1980) (on preliminary injunction, likely that university must pay for interpreter services for deaf graduate student), *vacated as moot,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Crawford v. University of North Carolina,* 440 F.Supp. 1047, 1059 (M.D.N.C. 1977) (same); *Barnes v. Converse College,* 436 F.Supp. 635, 637 (D.S.C.1977) ("[I]t is probable that, under this statute and regulation, the defendant is obliged to provide for such 'auxiliary aids' as an interpreter [to a deaf graduate student].").

The only case cited by the defendants on this issue is unavailing. *Colin K. v. Schmidt,* 536 F.Supp. 1375 (D.R.I.1982), *aff'd on other grounds,* 715 F.2d 1 (1st Cir.1983), involved a suit brought under the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. §§ 1401–1461 (1982), to fund the special education placement of two handicapped children.[1] Specifically, the plaintiffs sought residential placement for the handicapped children. The court held that the plaintiffs were not entitled to damages because "[f]unding a residential placement would constitute affirmative conduct making available to handicapped children facilities and programs not available to non-handicapped students." *Id.* at 1388.

*Colin K.* is distinguishable on at least two grounds. First, in the instant action, the plaintiffs do not seek to participate in programs that are not available to hearing parents. They do not seek special conferences or instructional programs. Rather, they seek to participate in precisely those activities that are currently available to non-handicapped parents. Second, the court's decision in *Colin K.* preceded the Supreme Court's decision in *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) which held that "to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* at 301, 105 S.Ct. at 720. Moreover, *Colin K.* was seemingly overruled by the Supreme Court's decision in *School Committee of Burlington v. Dep't of Education,* 471

---

**1.** The plaintiffs in *Colin K.* sought damages under section 504 of the Rehabilitation Act because that remedy was not available under the EAHCA. *Id.* at 1387–88.

U.S. 359, 370, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985).[2]

Our discussion of applicable case law would be incomplete without an examination of *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In *Rowley*, the Court concluded that the EAHCA did not require a school district to provide a hearing-impaired elementary school student with a sign-language interpreter. *Id.* at 210, 102 S.Ct. at 3052–53. Although on its face this ruling appears to defeat the plaintiffs' claim, closer scrutiny reveals otherwise. The Court's conclusion that a sign-language interpreter was unnecessary was based on the district court's finding that the child, was " 'receiving an "adequate" education, since she performs better than the average child in her class and is advancing easily from grade to grade.' " *Id.* (quoting district court opinion).[3] Thus, because the mandates of the EAHCA were satisfied without the further aid of a sign-language interpreter, the Department of Education was not required to fund such a service.

That is not the case herein. Without the provision of a sign-language interpreter, the plaintiffs are *de facto* barred from participation in the school districts programs for parents. This is not a case where the relief sought by the plaintiffs would be cumulative or duplicative of services they are already receiving. Thus, unlike the child in *Rowley*, the Rothschilds are not receiving adequate access to school district programs.

Finally, as we did in our earlier opinion, we find the rulings of the Office of Civil Rights of the United States Department of Education ("OCR") instructive. In *Case No. 02–89–1054, Sherburne–Earville School District*, the OCR found inadequate the school district's efforts to accommodate a deaf parent, i.e., special seating for the individual so that she might read the speaker's lips. *Id.* at 4–5 (attached to plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss as "Attachment 1"). Similarly, in an opinion letter published in the *Education for the Handicapped Law Report*, the OCR stated that "with respect to parents' conferences with teachers or administrators regarding their children's academic progress and at PTA meetings, interpreters or effective alternative means of communication should be provided by the recipient school district for deaf parents." 305 Educ. Handicapped L.R. 48–49 (June 11, 1988). Finally, in an opinion letter issued with respect to *Case No. 09–84–1102, Newark Unified School District*, the OCR determined that providing podium space for a sign-language interpreter retained at the parents' expense was insufficient to protect the parents' rights under section 504 of the Rehabilitation Act. *Id.* at 2 (attached to plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss as "Attachment 2"). "The District had an obligation under section 504 to either accommodate the complainants' request for a sign interpreter or to offer an effective alternative accommodation. It did neither." *Id.* at 4.

## III. CONCLUSION

Based on all the foregoing, we think it clear that the defendants' obligation under section 504 of the Rehabilitation Act extends to the provision of sign-language interpreters for hearing-impaired parents of district school children. We take pains, however, to emphasize that the district's obligation, and, correspondingly, the plaintiffs' entitlement, is limited to "school-initi-

---

**2.** In that case, the Court determined that [i]n a case where a court determines that a private placement desired by the parents was proper under the [EAHCA] and that an IEP [individualized educational program] calling for placement in a public school was inappropriate, it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school.

*Id.*

**3.** The child at issue in *Rowley* was already assisted in the classroom by an FM hearing aid, provided by the school district, to amplify words spoken into a wireless receiver by the teacher or students during classroom activities. The child also received instruction from a tutor for the deaf and from a speech therapist. *Id.* at 184, 102 S.Ct. at 3039.

ated conferences incident to the academic and/or disciplinary aspects of their child's education." *Rothschild v. Grottenthaler,* 716 F.Supp. 796, 800 (S.D.N.Y.1989). To the extent that the plaintiffs wish to voluntarily participate in any of the plethora of extra-curricular activities that their children may be involved in, we think they, like other parents, must do so at their own expense. School-sponsored activities that are designed for parental involvement and are focused on the student's academic or disciplinary progress, however, must be made available to the hearing-impaired. Consequently, we award judgment in favor of the plaintiffs.[4] The plaintiffs will settle an order and judgment consistent with the mandates of this decision.

SO ORDERED.

---

**4.** Because we grant the plaintiffs the relief they seek on the basis of their Rehabilitation Act claim, we need not examine the validity of their claim under 42 U.S.C. § 1983 (1982).