Kenneth and Karen **ROTHSCHILD,**
**Plaintiffs–Appellees,**

v.

Charles **GROTTENTHALER,** Superintendent of the Ramapo Central School District, and Ramapo Central School District, Defendants–Appellants.

No. 1299, Docket 90–7097.

United States Court of Appeals,
Second Circuit.

Argued May 10, 1990.

Decided June 27, 1990.

Reuben Ortenberg, Suffern, N.Y. (Coral Ortenberg Mayer Zeck & Prier, P.C., Suffern, N.Y., of counsel), for defendants-appellants.

Sarah S. Geer, Washington, D.C. (Marc P. Charmatz, Nat. Ass'n of the Deaf Legal Defense Fund, Washington, D.C.; Protection and Advocacy Unit, Westchester Independent Living Center, Inc., White Plains, N.Y., of counsel), for plaintiffs-appellees.

Before ALTIMARI and MAHONEY, Circuit Judges, and TENNEY *, Senior District Judge.

* Hon. Charles H. Tenney, United States District Court for the Southern District of New York, sitting by designation.

ALTIMARI, Circuit Judge:

The central question presented on this appeal is whether a public school district which receives federal financial assistance must provide sign-language interpreter services, at school district expense, to deaf parents of non-hearing impaired children at certain school-initiated activities. Defendants-appellants Ramapo Central School District ("School District") and the School District Superintendent, Charles Grottenthaler, appeal from a judgment, entered in the United States District Court for the Southern District of New York (Gerard L. Goettel, *Judge*), declaring the School District's refusal to provide sign-language interpreter services to the Rothschilds to be a violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794(a) (West Supp.1990) ("Rehabilitation Act").

On appeal, the School District and Superintendent Grottenthaler contend that the district court erred in finding a violation of section 504. They claim that the Rothschilds are not "otherwise qualified" to participate in or benefit from any activity offered by the School District. Accordingly, they contend, section 504 is not violated by the refusal to provide sign-language interpreter services to the Rothschilds. The School District and Superintendent Grottenthaler also claim that the district court's Judgment, particularly its order that sign-language interpreter services be provided at a child's graduation, is inconsistent with its Decision. For the reasons set forth below, the judgment of the district court is affirmed in part, and vacated and remanded in part.

## BACKGROUND

The parties stipulate that plaintiffs-appellees Kenneth and Karen Rothschild are deaf parents of two non-hearing impaired children who attend schools operated by defendant-appellant Ramapo Central School District. It is also stipulated that the Rothschilds use American Sign Language as their primary method of communication. The parties further stipulate that the Rothschilds have been invited to attend meetings with School District teachers and counselors "to discuss their childrens' [sic] academic program, disciplinary problems, or other matters." In addition, the Rothschilds have been invited to attend various group events, such as "Back to School Night" and orientation meetings, at their children's schools. The Rothschilds contend that, without the services of a sign-language interpreter, they cannot effectively communicate with teachers and other School District personnel at these meetings, conferences, and events. Thus, while they are concerned about their children's educational development and, like other parents in the School District, are invited to participate in such activities, the Rothschilds often do not attend.

Since September 1981, the Rothschilds have made numerous requests that the School District provide a sign-language interpreter, at School District expense, for various school-initiated activities related to their children's education. However, the School District has consistently refused to provide such services, citing its belief that the Rothschilds are not "qualified" under section 504. On occasion, the Rothschilds have hired a sign-language interpreter to facilitate communication with teachers and other School District personnel. In these instances, the School District has refused to pay the interpreter bills submitted by or on behalf of the Rothschilds. The School District has, however, provided special seating arrangements at school functions for the Rothschilds and their privately-hired sign-language interpreters.

The Rothschilds commenced this action in May 1989, seeking declaratory and injunctive relief, as well as damages, under section 504 of the Rehabilitation Act and 42 U.S.C. § 1983. The Rothschilds contended that, although they are invited to attend School District meetings, conferences, and other events concerning their children's education, they cannot effectively communicate with teachers and other School District personnel at these activities without the services of a sign-language interpreter. They claimed that, without a sign-language interpreter, the opportunity afforded them to participate in School District activities

concerning their children's education is not equal to the opportunity afforded non-hearing impaired parents.

The defendants moved to dismiss the Rothschilds' action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(2) & (b)(6). The district court dismissed the Rothschilds' claim for damages against defendant Grottenthaler, but denied the defendants' motions in all other respects. *Rothschild v. Grottenthaler*, 716 F.Supp. 796 (S.D.N.Y.1989). The matter was tried at a bench trial on stipulated facts. The court held that, under section 504 of the Rehabilitation Act, the Rothschilds are entitled to sign-language interpreter services, provided at School District expense, at " 'school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education.' " *Rothschild v. Grottenthaler*, 725 F.Supp. 776, 779–80 (S.D.N.Y.1989) (quoting *Rothschild*, 716 F.Supp. at 800). The district court ordered the School District to provide sign-language interpreter services to the Rothschilds, "upon their request and without cost to them, in school initiated activities that are designed for parental involvement and are incident to the [Rothschilds'] children's academic or disciplinary progress." It further ordered the School District to reimburse the Rothschilds some $2,000 expended by them to hire a sign-language interpreter for previous school functions. The district court also awarded reasonable attorneys' fees and costs to the Rothschilds, pursuant to section 505(a)(2) of the Rehabilitation Act, 29 U.S.C.A. § 794a(a)(2) (West 1985). Because this relief was granted under section 504 of the Rehabilitation Act, the district court considered it unnecessary to determine the Rothschilds' claim under section 1983. This appeal followed.

## DISCUSSION

■ This case presents a matter of first impression: Whether section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794(a) (West Supp.1990), requires a public school district receiving federal financial assistance to provide sign-language interpreter services, at school district expense, to deaf parents of non-hearing impaired children at certain school-initiated activities. Defendant-appellant School District routinely invites plaintiffs-appellees Kenneth and Karen Rothschild, whose children are enrolled in the School District, to parent-teacher conferences, meetings with School District personnel and other events designed for parental involvement. The Rothschilds are interested in participating in these activities. They contend, however, that absent the services of a sign-language interpreter, they are denied an equal opportunity to participate in these activities because they cannot effectively communicate with teachers and other School District personnel. They claim that the School District's failure to make a reasonable accommodation that would afford them an equal opportunity to participate in school-initiated activities incident to their children's education constitutes a violation of section 504 of the Rehabilitation Act. We agree.

■ Our inquiry begins, as it must, with the language of section 504. *See United States v. University Hosp.*, 729 F.2d 144, 154 (2d Cir.1984). That section, in pertinent part, provides:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794(a) (West Supp.1990). In this Circuit, it is settled that a private right of action against recipients of federal financial assistance may be implied from section 504. *Marlow v. Dep't of Educ.*, 820 F.2d 581, 583 (2d Cir.1987) (per curiam), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988); *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981); *Kampmeier v. Nyquist*, 553 F.2d 296, 299 (2d Cir.1977). To establish a *prima facie* violation of section 504, a plaintiff must prove that: 1) he or she is a "handicapped

person" as defined in the Rehabilitation Act; 2) he or she is "otherwise qualified" to participate in the offered activity or to enjoy its benefits; 3) he or she is being excluded from such participation or enjoyment solely by reason of his or her handicap; and 4) the program denying the plaintiff participation receives federal financial assistance. *Doe v. New York Univ.*, 666 F.2d at 774–75. Once a *prima facie* violation of section 504 has been established, "the defendant must present evidence to rebut the inference of illegality." *New York State Ass'n for Retarded Children v. Carey*, 612 F.2d 644, 649 (2d Cir.1979); *see Doe v. New York Univ.*, 666 F.2d at 776–77.

In the present case, the School District concedes that the Rothschilds are handicapped persons within the meaning of the Rehabilitation Act, *see* 29 U.S.C.A. § 706(8) (West Supp.1990), and that the School District receives federal financial assistance, *see* 34 C.F.R. § 104.3(h) (1989). The School District does not seriously contest that the Rothschilds are denied the opportunity to participate in school-initiated activities concerning their children's education by reason of their handicaps. Rather, the heart of the School District's argument is that the Rothschilds are not "otherwise qualified" for the offered activities. According to the School District, "Section 504 does not apply to plaintiffs because public schools are for children, not their parents and Section 504 was designed to protect children, not their parents." Appellants' Brief at 8. The School District seriously misapprehends the import of section 504.

"Section 504 was enacted to prevent discrimination against all handicapped individuals ... in relation to Federal assistance in employment, housing, transportation, education, health services, *or any other Federally-aided programs.*" S.Rep. No. 1297, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6373, 6388 (emphasis added). This "broad government policy," *id.* at 6390, extends protection from discrimination to any handicapped individual who is "otherwise qualified" to participate in a program or activity offered by a recipient of federal financial assist-

ance. *See* 29 U.S.C.A. § 794(b)(2)(B) (West Supp.1990) ("program or activity" means, *inter alia*, "all of the operations" of a local school system); *see also Leake v. Long Island Jewish Medical Center*, 869 F.2d 130, 131 (2d Cir.1989). As the Department of Education ("DOE") regulations promulgated pursuant to section 504 make clear, a recipient of federal financial assistance may not "[a]fford a qualified handicapped person an opportunity to participate in or benefit from [its] aid, benefit, or service that is not equal to that afforded others." 34 C.F.R. § 104.4(b)(ii) (1989).

■ An "otherwise qualified" handicapped individual is one "who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *see also Doe v. New York Univ.*, 666 F.2d at 775. A recipient of federal financial assistance may consider an individual's handicap if it "could reasonably be viewed as posing a substantial risk that the applicant would be unable to meet [the recipient's] reasonable standards." *Doe v. New York Univ.*, 666 F.2d at 775 (citing *Southeastern Community College*, 442 U.S. at 413 n. 12, 99 S.Ct. at 2371 n. 12). However, where an individual's handicap is unrelated to reasonable requirements for participation in the activity, section 504 prohibits denying that individual's participation on the sole basis of his or her handicap. *See United States v. University Hospital*, 729 F.2d at 156. If the Rothschilds are "otherwise qualified" for the parent-oriented activities offered by the School District, the Rothschilds must be afforded an equal opportunity to participate in those activities.

■ The Rothschilds are "otherwise qualified" for the parent-oriented activities incident to their children's education that are offered by the School District. The Rothschilds are parents of school children enrolled in the School District. They are concerned with their children's educational development. They are interested in meeting with teachers and other School District

personnel and are able to meet them at the scheduled times and locations. The Rothschilds' inability to effectively communicate without the services of a sign-language interpreter simply has no bearing on the reasonable requirements for participating in school-initiated activities incident to their children's education. The fact that they have expended some $2,000 on privately-hired sign-language interpreters is evidence of their concern. Their use of privately-hired sign-language interpreters is also evidence that it is solely the Rothschilds' inability, as deaf persons, to effectively communicate with teachers and other School District personnel that prevents their participation in parent-teacher conferences and other School District activities. With the assistance of a sign-language interpreter, the Rothschilds are able to participate in school-initiated meetings and conferences concerning their children's education. *Cf. Southeastern Community College,* 442 U.S. at 413, 99 S.Ct. at 2370–71 (college nursing program need not make "substantial modifications" to standards of admission for deaf applicant). Under these circumstances, it seems to us that the Rothschilds are being unfairly "excluded from participation in a federally funded program 'solely by reason of [their] handicap.'" *Id.* at 405, 99 S.Ct. at 2366.

This conclusion is supported by the DOE regulations interpreting the term "otherwise qualified" contained in section 504. These regulations, promulgated pursuant to 29 U.S.C.A. § 794(a), are "an important source of guidance on the meaning of § 504." *Alexander v. Choate,* 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985); *see Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 642 & n. 30, 106 S.Ct. 2101, 2120 & n. 30, 90 L.Ed.2d 584 (1986). Regulation 104.3(k) defines "qualified handicapped person" as:

(1) With respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question;

(2) With respect to public preschool[,] elementary, secondary, or adult educational services, a handicapped person (i) of an age during which nonhandi-

capped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act; and

(3) With respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity;

(4) *With respect to other services, a handicapped person who meets the essential eligibility requirements for the receipt of such services.*

34 C.F.R. 104.3(k) (1989) (emphasis added). The School District and Superintendent Grottenthaler contend that the Rothschilds are not "otherwise qualified" because they are not eligible to receive educational services under Regulation 104.3(k)(2). They argue that this provision alone applies to the School District and that none of its related provisions address the rights of persons, such as parents, not actually receiving educational services. However, the School District's proposed interpretation of Regulation 104.3(k) is inconsistent with its plain language. Regulation 104.3(k) does not define "qualified handicapped person" with regard to the category of institution receiving federal financial assistance, but rather the category of service offered by the recipient institution. The fact that a particular recipient institution is primarily engaged in the provision of one category of service does not exempt it from Regulation 104.3(k) in its provision of other services. Thus, while the School District is subject to section 504 in providing educational services, that is not the only area in which it must refrain from discrimination on the basis of handicap. In hiring employees, for example, the School District is obviously subject to the definition of qualified handicapped person in Regulation 104.3(k)(1). So too, the School District is subject to the definition of qualified handicapped person in Regulation 104.3(k)(4) with respect to

"other. services" which, in this case, include parent-teacher conferences, meetings with School District personnel, and other parent-oriented services related to the education of its students. The Rothschilds are not excluded from the protection of section 504 merely because they are parents and not school children.

The School District has failed to articulate any reason that the Rothschilds should not be considered eligible to participate in school-initiated activities designed to involve parents in their children's education. *See Bonner v. Lewis*, 857 F.2d 559, 563 (9th Cir.1988) (prison inmate is "qualified," for purposes of section 504, to participate in prison activities under Department of Justice regulation identical to DOE regulation 104.3(k)(4)). That the Rothschilds meet the "essential eligibility requirements" for participation in the School District's parent-oriented activities is bolstered by the DOE's own interpretation of Regulation 104.3(k)(4). The DOE has determined that, under section 504, schools are required to afford handicapped parents of non-handicapped school children the same opportunity to participate in school activities as that afforded non-handicapped parents. In Case No. 02–89–1054 (Sherburne–Earlville School District), for example, the DOE's Office for Civil Rights ("OCR") determined that:

> With respect to other services, a handicapped person is one who meets the essential eligibility requirements for the receipt of such services. The injured party, as a parent, is entitled to participate in activities and programs which affect her children. *See* 34 C.F.R. § 104.3(k)(4). OCR, therefore, concludes that the injured party is a qualified handicapped person.

*See also* Case No. 09–84–1102 (Newark Unified School District); Letter of Louis O. Bryson, Sr., Director, Post-secondary Education Division, 305 *Educ. Handicapped L.R.* 48–49 (June 11, 1988). It is instructive to note that, after the district court rendered its judgment, the OCR determined that the School District's refusal to provide a sign-language interpreter to the Rothschilds violates section 504. According to the OCR:

> As parents, the [Rothschilds] meet the essential eligibility requirements for participation in meetings with school teachers and administrators and in other school events since .they have been invited or requested to attend.... The Section 504 statute and the regulation make clear that the [School] District owes a duty ... to parents who are handicapped and seek to participate in their children's education in the same manner as nonhandicapped persons.

Case No. 02–88–1108 (Ramapo Central School District) (attached to Appellees' Brief). The DOE's interpretation of Regulation 104.3(k)(4), a regulation which it promulgated, is "controlling unless it is plainly erroneous or inconsistent with the regulation." *Lamkin v. Bowen*, 721 F.Supp. 263, 268 (D.Colo.1989) (citing *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)). In this case, we find the DOE's interpretation to be neither plainly erroneous nor inconsistent with Regulation 104.3(k). Accordingly, we hold that the Rothschilds are "otherwise qualified" for the parent-oriented activities offered by the School District.

▆▆▆▆ As "otherwise qualified handicapped individuals," the Rothschilds are entitled to "meaningful access to" the activities that the School District offers parents. *See Alexander*, 469 U.S. at 301, 105 S.Ct. at 720; *see also Dopico v. Goldschmidt*, 687 F.2d 644, 651–52 (2d Cir.1982). However, our determination must be "responsive to two powerful but countervailing considerations—the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds." *Alexander*, 469 U.S. at 299, 105 S.Ct. at 719. Accommodations to permit access to handicapped persons should not impose "undue financial and administrative burdens." *Southeastern Community College*, 442 U.S. at 412–13, 99 S.Ct. at 2370–71. Thus, a recipient of federal financial assistance should not be "required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped." *Alexander*, 469 U.S. at 300, 105 S.Ct. at 720

(citation omitted); *see Lynch v. Maher*, 507 F.Supp. 1268, 1279 (D.Conn.1981). A recipient may, however, be required to make "reasonable" modifications to accommodate an otherwise qualified handicapped individual. *Alexander*, 469 U.S. at 300, 105 S.Ct. at 719–20. "[S]ection 504 of the Rehabilitation Act requires some degree of positive effort to expand the availability of federally funded programs to handicapped persons otherwise qualified to benefit from them." *Dopico*, 687 F.2d at 653 n. 6.

■ Mindful of the need to strike a balance between the rights of the Rothschilds and the legitimate financial and administrative concerns of the School District, the district court limited the scope of activities for which the School District would be required to provide a sign-language interpreter. It stated:

> We take pains, however, to emphasize that the [school] district's obligation, and, correspondingly, the plaintiffs' entitlement, is limited to "school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education." To the extent that the plaintiffs wish to voluntarily participate in any of the plethora of extra-curricular activities that their children may be involved in, we think they, like other parents, must do so at their own expense.

*Rothschild*, 725 F.Supp. at 779–80 (citation omitted). This seems a "reasonable accommodation," *Alexander*, 469 U.S. at 301, 105 S.Ct. at 720, which permits the Rothschilds to be involved in their children's education while preserving the responsible administration of the School District. It is an accommodation which fosters the Rothschilds' interest in their children's educational development by facilitating their involvement in that development, without requiring the School District to subsidize parental involvement in extracurricular activities. The reasonableness of providing the Rothschilds with sign-language interpreters at certain school-initiated activities is demonstrated by the contemplation of such an accommodation in related DOE regulations promulgated pursuant to section 504. *See, e.g.,* 34 C.F.R. § 104.12(b)(2) (1989) (with

regard to employment practices, "[r]easonable accommodation may include ... the provision of readers or interpreters"); 34 C.F.R. § 104.44(d)(2) (1989) (in postsecondary education services, appropriate "[a]uxiliary aids may include taped texts, interpreters or other effective methods of making orally delivered materials available to students with hearing impairments"); 34 C.F.R. § 104.52(d)(3) (1989) (with regard to health, welfare and other social services, appropriate "auxiliary aids may include ... interpreters, and other aids for persons with impaired hearing"). The School District's refusal to modify its program to accommodate the Rothschilds' handicap is "unreasonable and discriminatory." *Southeastern Community College*, 442 U.S. at 413, 99 S.Ct. at 2370. The Rothschilds' entitlement to sign-language interpreter services provided at School District expense is limited, however, to those activities directly involving their children's academic and/or disciplinary progress.

Finally, it appears that the district court's Judgment is partially inconsistent with its Opinion and with this opinion. While the Opinion articulates a limitation, which we adopt, of the Rothschilds' entitlement to " 'school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education,' " 725 F.Supp. at 779–80 (quoting *Rothschild*, 716 F.Supp. at 800), the Judgment is not so limited. In particular, under the district court's rationale, the Judgment should not have included the requirement that the School District provide a sign-language interpreter at a child's graduation ceremony. Graduation does not seem directly related to a child's academic and/or disciplinary progress and, absent a factual determination to the contrary, should not have been included in the district court's Judgment. Accordingly, we vacate that part of the district court's Judgment which orders the School District to provide a sign-language interpreter for a child's graduation.

CONCLUSION

We have examined each of defendants-appellants' remaining arguments and find

them to be without merit. In light of the foregoing, the district court's judgment is affirmed in part, and vacated and remanded in part for modification not inconsistent with this opinion.