Jorge & Jessica **SOTO**, Plaintiffs,

v.

**CITY OF NEWARK and Newark Municipal Court, Defendants.**

**No. Civ.A. 98–5582.**

United States District Court, D. New Jersey.

Oct. 29, 1999.

Clara R. Smit, E. Brunswick, NJ, for plaintiffs.

Kathleen C. Goger, Assistant Corporation Counsel, Newark, NJ, for defendants.

## *OPINION*

WOLIN, District Judge.

This matter comes before the Court on the motion of Plaintiffs, Jorge and Jessica Soto (the "Sotos") for partial summary judgment as to liability pursuant to Federal Rule of Civil Procedure 56 and on the cross-motion of Defendants, the City of Newark and the Newark Municipal Court (collectively, "Defendants"), for summary judgment to dismiss the Complaint, with prejudice pursuant to Rule 56. The Court has considered the matter pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Plaintiffs' motion will be granted in part and denied in part. Furthermore, the Defendants' motion will be granted in part and denied in part.

## BACKGROUND

The following facts are undisputed. The Sotos, profoundly deaf individuals who communicate primarily in American Sign–Language, decided to marry. (Df.Stat.Un-

dis. Facts ¶¶ 8–9); (Jorge Soto Certif. ¶¶ 1–2); (Jessica Soto Certif. ¶¶ 1–2). Thus, on December 17, 1997, the Sotos were married in the Newark Municipal Court ("Municipal Court"). (Df.Stat.Undis. Facts ¶ 12). To their dismay, however, the Municipal Court did not furnish a sign-language interpreter. (*Id.;* Jorge Soto Certif. ¶ 3; Jessica Soto Certif. ¶ 4–5).

On three occasions, the Sotos requested that the Defendant, the Municipal Court, accommodate their disability by providing a qualified sign-language interpreter. (Df.Stat.Undis. Facts ¶¶ 9–11). The Municipal Court repeatedly rejected their requests. (*Id.*). First, on December 3, the Municipal Court rejected Jessica Soto's request for an interpreter for her wedding. (*Id.* ¶ 9). The Municipal Court informed her that it does not provide interpreters for weddings. (*Id.*). After that, on December 14, the Municipal Court rejected the same request made by Jessica Soto's father, Luis Silva. (*Id.* ¶ 10). Finally, on the day of the wedding, the Municipal Court rejected Jorge Soto's request. (*Id.* ¶ 11).

Because the Municipal Court wedding was conducted without a sign-language interpreter, the Sotos could not understand much of the proceedings. (Jorge Soto Certif. ¶ 3; Jessica Soto Certif. ¶ 4). Indeed, as a result of their disability, they did not fully understand their vows or the words spoken by the presiding judge. (Jorge Soto Certif. ¶ 3; Jessica Soto Certif. ¶ 4–5).

Seeking to redress alleged injuries, the Sotos filed a Complaint in the Essex County Superior Court. The Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441. In the Complaint, they claim that Defendants' conduct violated Title II of the American with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and the New Jersey Law Against Discrimination ("LAD").[1] They also assert a common law claim for intentional infliction of emotional distress.

The Sotos now seek partial summary judgment on liability concerning the ADA, RA, and LAD claims. Defendants oppose the motion. Defendants also cross-move for summary judgment seeking a dismissal of the Complaint in its entirety. Defendants maintain that the ADA, RA, and LAD do not require them to provide sign-language interpreters at Municipal Court wedding ceremonies. Defendants further maintain that a public entity may not be found liable for intentional infliction of emotional distress.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989). The burden is upon the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477

---

1. The Court has jurisdiction over the LAD claim pursuant to 28 U.S.C. § 1367.

U.S. at 249, 106 S.Ct. 2505. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *See id.*

When the non-moving party bears the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

Further, when a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## II. The ADA Claim

Before the enactment of the ADA, Congress recognized that "current laws were 'inadequate' to combat the 'pervasive problems of discrimination that people with disabilities are facing.' " *Helen L. v. DiDario,* 46 F.3d 325, 331 (3d Cir.1995)

(quoting S.Rep. No. 116, 101st Cong., 1st Sess. 18 (1989); H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 47 (1990) U.S.Code Cong. & Admin.News 1989 pp. 303, 329). Congress found that "discrimination against individuals with disabilities persists in such critical areas as . . . access to public services." 42 U.S.C. § 12101(a)(4). Congress also found that "individuals with disabilities continually encounter various forms of discrimination including . . . communication barriers." *Id.* § 12101(a)(5).

As a result of this discrimination, Congress enacted the ADA. Through the ADA, Congress sought "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* § 12101(b)(1).

Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; *Civic Ass'n of the Deaf v. Giuliani,* 915 F.Supp. 622, 634 (S.D.N.Y.1996). Title II provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Thus, to show a violation of title II, a plaintiff must prove that (1) he is a "qualified individual with a disability;" (2) he is being excluded from participation in or being denied the benefits of some "services, programs, or activities," by reason of his disability; and (3) the entity which provides the service, program or activity is a public entity.[2] *See, e.g., Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998); *Bowers v. National Collegiate Athletic Ass'n, ACT, Inc.,* 9 F.Supp.2d 460, 475 (D.N.J.1998); *Adelman*

---

**2.** The Court notes, without finding it a requirement, that one district court held that a plaintiff must request a sign-language interpreter to prove a violation of Title II. *See Baker v. Louisiana,* No. 91–1874, 1992 WL 510773 (W.D.La. Sept.8, 1992), *aff'd,* 9 F.3d 103 (5th Cir.1993). In the instant case, Defendants admit that the Sotos made several requests for an interpreter.

*v. Dunmire,* No. Civ–A. 95–4039, 1997 WL 164240 (E.D.Pa. Mar. 28, 1997), *aff'd,* 149 F.3d 1163 (3d Cir.1998); *Civic Ass'n of the Deaf,* 915 F.Supp. at 634; *Concerned Parents to Save Dreher Park Ctr. v. West Palm Beach,* 846 F.Supp. 986, 989–90 (S.D.Fla.1994).

Defendants do not dispute that the Sotos are "qualified individual[s] with ... disabilit[ies]."[3] Nor do they dispute that the Municipal Court is a public entity which provides "services, programs, or activities." Rather, Defendants argue that a Municipal Court wedding is not "service" within the meaning of the ADA. Thus, at issue for the Court is whether the Municipal Court wedding is a "service." If it is, the Court must then determine whether the Soto's were denied participation in or the benefit of this "service."[4]

■ The ADA, as a remedial statute, must be broadly construed to effectuate its purpose. *See Helen L. v. DiDario,* 46 F.3d 325, 331–33 (3d Cir.1994); *Niece v. Fitzner,* 922 F.Supp. 1208, 1217 (E.D.Mich.1996); *Lincoln CERCPAC v. Health and Hosps. Corp.,* 920 F.Supp. 488, 497 (S.D.N.Y.1996); *Civic Ass'n of the Deaf,* 915 F.Supp. at 634. Consistent with this construction, "most courts have given a broad reading to the term 'service.' " *Niece,* 922 F.Supp. at 1217. For instance, one court broadly construed a prison's "services" to include a prisoner's access to a telephone. *See Niece,* 922 F.Supp. at 1218–19; *see also Clarkson v. Coughlin,* 898 F.Supp. 1019, 1045–47 (S.D.N.Y.1995) (finding that, pursuant to the ADA, a prison must provide hearing-impaired prisoners with adequate communication devices for telephones and televisions). Similarly, another court found that a hospital's "services" included its Lamaze class. *See Bravin v. Mount Sinai Medical Ctr.,* 186 F.R.D. 293, 304–05 (S.D.N.Y.1999). Another court, in accord with this broad reading, considered a public university's intercollegiate football program to be a "service" of the university. *See Bowers,* 9 F.Supp.2d at 476. Significantly, in a situation similar to the present case, the Eighth Circuit found that a county quorum meeting held at a county courthouse constituted a "service." *See Layton v. Elder,* 143 F.3d 469, 472–73 (8th Cir.1998).

■ In addition to considering this broad construction, the Court must also give considerable weight to the Department of Justice's ("DOJ") regulations.[5] *See Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982); *Helen L.,* 46 F.3d at 331–32. These regulations, like the above cited cases, shed light on the meaning and scope of the term "service." The regulations state that the ADA's coverage extends to "all services ... made available by public entities." 28 C.F.R. § 35.102(a) (1999). According to the Third Circuit, "[t]his broad language is intended to 'appl[y] to *anything* a public entity does.' " *Yeskey v. Pennsylvania Dep't of Corrections,* 118 F.3d 168, 171 (3d

---

**3.** Undoubtedly, deafness is a disability. *See, e.g., Duffy v. Riveland,* 98 F.3d 447, 454–55 (9th Cir.1996) (holding that hearing loss is a disability under the ADA); *Bryant v. Better Bus. Bureau,* 923 F.Supp. 720, 743 (D.Md. 1996) (same).

**4.** The Court notes that this claim is particularly ripe for summary judgment. Indeed, the parties do not dispute the material facts surrounding the ADA claim. They agree that, even after the Soto's several requests, the Municipal Court failed to provide the Sotos with a sign-language interpreter at their Municipal Court wedding. As a result, the dispute primarily concerns the meaning of "service."

**5.** Title II directs the DOJ to promulgate regulations. Substantial weight and considerable deference should be accorded to the DOJ's construction of the statute. *Blum,* 457 U.S. at 141, 102 S.Ct. 2355; *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Helen L.,* 46 F.3d at 331–32. Courts should give the DOJ's regulations controlling weight, unless the regulations are "arbitrary, capricious or manifestly contrary to the statute." *Chevron, U.S.A., Inc.,* 467 U.S. at 844, 104 S.Ct. 2778; *Helen L.,* 46 F.3d at 332.

Cir.1997) (quoting 28 C.F.R. pt. 35, app. A. subpt. A (emphasis added) (brackets in original)).

Despite this broad construction, Defendants still maintain that Municipal Court weddings are not services of the City of Newark or the Municipal Court. Because the statute delineating the Municipal Court's jurisdiction does not mention weddings, Defendants argue that such weddings cannot be a function or "service" of the Municipal Court.[6] Defendants point out that a separate statute grants Municipal Court judges the power to solemnize weddings.[7] This power, they assert, is "not in fulfillment of the statutory purposes of the courts," but is a separate power not related to the Municipal Court's function. Because this is not a Municipal Court function or "service," they conclude, the Municipal Court need not comply with the ADA—in other words, it need not reasonably accommodate the Sotos' disability.

▉ The Court cannot read "service" so narrowly. Defendants' construction contravenes both the broad language of ADA and the DOJ's regulations; it also contradicts common sense.

By the Defendant's own admission, the Municipal Court coordinates the scheduling of marriage proceedings. (Anderson Certif. ¶ 4). It handles inquiries from the public regarding such proceedings. (*Id.*). Moreover, it conducts these weddings at the Municipal Court house. (*Id.*).

Such conduct, in the Court's view, constitutes a "service." Where a governmental entity coordinates, schedules, and conducts proceedings on its own premises to benefit the public, such conduct is necessarily a "service" to the public. To state otherwise is disingenuous. Like other "services," such as Lamaze classes, prisoner telephone use, and court house meetings, the Municipal Court offers a "service"—an opportunity to marry at the court house. Hence, in the words of the Third Circuit, this is a service because it is "[something] a public entity does."[8] *Yeskey*, 118 F.3d at 171.

After finding that the Municipal Court wedding is a "service" within the meaning of the ADA, the Court must now determine if the Soto's were denied the benefit of this "service."

The regulations provide that a public entity, such as the Municipal Court, shall "afford a qualified individual with a disability an opportunity to participate in or benefit from ... [a] service that is ... equal to that afforded to others." 28 C.F.R. § 35.130(b)(ii) (1999). Furthermore, the regulations require that "[a] public entity shall take appropriate steps to ensure that communications with ... [disabled] participants ... are as effective as communications with others." *Id.* at § 35.160(a).

Clearly, the Soto's did not "participate or benefit from [this] service"—the wedding—in a manner "equal to that afforded to others." *Id.* at § 35.130(b)(ii). Unlike non-disabled individuals, they could not hear the vows or understand the judge. Moreover, the Municipal Court did not provide the Sotos—disabled participants—with communications as effective as that available to hearing people. *Id.* at § 35.160(a). Indeed, the Municipal Court provided no effective means of communication. Thus, the Court finds that the Defendants denied the Sotos the full benefit of the Municipal Court wedding service.

---

**6.** Defendants cite to N.J.Stat.Ann. § 2B:12–1 to 12–31 which establishes the Municipal Court's power and jurisdiction.

**7.** Defendants cite to N.J.Stat.Ann. § 37:1–13 which empowers Municipal Court judges, among others, to officiate at weddings.

**8.** Defendant's narrow construction would create such a large loop-hole that any public entity could side-step the ADA. Indeed, under Defendants' view, only statutorily enumerated functions are true "services." Thus, under Defendants' view, if a public entity engaged in an activity not mentioned by the statute which established that entity, it need not comply with the ADA.

Accordingly, the Sotos satisfied all three prongs required to state a violation of the ADA. As (1) qualified individuals with disabilities, (2) they were denied the benefit of the wedding "service" (3) by the Municipal Court, a public entity.

Defendants pose an alternative argument. They argue that even if a Municipal Court wedding is a "service," a wedding is so minor and "ancillary" to the Municipal Court's function that the ADA should not apply. Instead, Defendants maintain that only "core services" should receive the protections of the ADA.

The Court is not convinced. Such construction contradicts the plain language of the statute. The statute clearly states that persons with disabilities shall not be denied the benefits of "services." It contains no restricting language limiting its protections to "core services." Again, the Court is unwilling to narrowly construe the statute. *See Niece*, 922 F.Supp. at 1217; *Lincoln CERCPAC*, 920 F.Supp. at 497; *Civic Ass'n of the Deaf*, 915 F.Supp. at 634.

Furthermore, Defendants' interpretation flatly contradicts the DOJ's regulations. The regulations provide no exception for ancillary services. On the contrary, as noted above, they state that the ADA's protections apply to "*all* services of a public entity," not merely core services. 28 C.F.R. § 35.102(a) (emphasis added).

Lastly, the case law does not support Defendants' view. Indeed, in the cases discussed above, the public entities' "services" did not involve "core" functions. While prisoner telephones is a "service" within the meaning of the ADA, one cannot seriously argue that it is a "core" function of prisons. Similarly, a Lamaze class is hardly a "core" function of a hospital. Yet, pursuant to the ADA, the public entities implementing these "services" must accommodate individuals with disabilities.

Defendants cite to only one case, a Second Circuit case, in support of its position. *See Rothschild v. Grottenthaler*, 907 F.2d 286 (2d Cir.1990).[9] In *Rothschild*, the court found that a school must provide deaf-parents of a non-disabled child with a sign-language interpreter at "school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education." *Id.* at 293. The court ruled, however, that the school need not provide the deaf parents with an interpreter at some extracurricular activities. *Id.*

Defendants claim that the *Rothschild* court distinguished between the school's "core" and "ancillary" activities. Therefore, it contends, this Court should do the same.

Defendants misread *Rothschild*. The *Rothschild* court did not distinguish between core and ancillary activities. Instead, it noted that the statutory protections afforded to disabled individuals do not apply if a public entity cannot "reasonably accommodate" a disability. *See id.* The *Rothschild* court's "reasonable accommodation" analysis hinged upon a public entity's ability to accommodate a disability in a practical, unobstructive manner—not upon the entity's core function.[10] *See id.*

The Third Circuit has addressed and defined a public entity's responsibility to "reasonably accommodate" disabilities. *See Easley v. Snider*, 36 F.3d 297 (3d Cir.1994). Our Circuit has held that a public entity need not accommodate one's disabilities if such accommodation imposes an "undue burden" or requires a "funda-

---

9. *Rothschild* involves the Rehabilitation Act, not the ADA. Nevertheless, the law developed under the Rehabilitation Act is applicable to Title II of the ADA. *See Helen L.*, 46 F.3d at 330 n. 7 (citing *Easley v. Snider*, 36 F.3d 297 (3d Cir.1994)).

10. Indeed, the court found that with regard to the "plethora" of extracurricular activities, providing interpreters may not always be a "reasonable accommodation" if such accommodation interferes with "the responsible administration of the School District." *Rothschild*, 907 F.2d at 286 (quotations omitted).

mental ·modification" of a public entity's program. *See id.* at 302–05. If, however, "there is no factual basis in the record demonstrating that accommodating the individual would require a fundamental modification or undue burden," then a public entity's failure to reasonably accommodate an individual's disability violates the ADA. *Id.* at 302.

 Following this analysis in the instant case, the Court finds that providing interpreters for the Municipal Court weddings is a "reasonable accommodation." Defendants do not argue nor does the record provide any factual basis which demonstrates that providing the Sotos with interpreters would impose an "undue burden" or require a "fundamental modification." On the contrary, the record indicates that such accommodation would impose little burden. Indeed, the Municipal Court routinely supplies sign-language interpreters for other Municipal Court functions; [11] thus, providing sign-language interpreters at Municipal Court weddings, without doubt, is a "reasonable accommodation" because the Municipal Court need only outlay relatively little expense or effort in providing such interpreters.

Accordingly, the Court reiterates that Defendant violated the Soto's rights under Title II of the ADA. In sum, (1) the Defendants, as "public entities," (2) denied the Sotos, "qualified individuals with disabilities," (3) the benefits of the Municipal

Court wedding—a "service." Thus, for the above stated reasons, the Court grants the Soto's partial summary judgment on liability as to the ADA claim.[12]

## III. LAD Claim

 The Sotos also allege a violation of LAD. Both parties moved for summary judgment on this issue. Neither side, however, has satisfied its burden in demonstrating an absence of genuine issues of material fact.

Of course, as noted above, the moving party has the burden of showing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. Neither party has done so. Indeed, neither party points to or references "the pleadings, depositions, answers to interrogatories, ... admissions on file, [or] the affidavits [to] show that there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c); *Hersh,* 789 F.2d at 232. Plaintiffs, in their brief, provide little more than four sentences and a quote of the statute. Similarly, Defendants offer a conclusory analysis which merely references their ADA argument. Because both parties have failed to meet its burden in moving for summary judgment, the Court will deny both summary judgment motions on this issue. The Court will, if necessary, entertain future motions on this issue.[13]

---

**11.** For instance, the Municipal Court provides sign-language interpreters for hearing impaired parties and witnesses in Municipal Court cases. (Df.St.Undis. Facts ¶ 6).

**12.** Defendants offer another argument. Because the Municipal Court does not provide interpreters for non-english speakers who seek to marry, Defendants contend, it must only treat the disabled in the same fashion—in other words, it need not supply sign-language interpreters for the hearing impaired. This argument misses the point of the ADA. Congress enacted the ADA to aid those with disabilities, such as individuals who are deaf. Thus, in many circumstances the ADA requires public entities to treat disabled differently than the non-disabled. Indeed, public

entities often must accommodate those with disabilities.

**13.** The Court also notes that the each party's legal analysis is deficient. The Sotos merely cite to very general legal propositions. They fail to acknowledge that, apparently, no court has addressed the impact of the LAD with regard to services offered by public entities. Similarly, Defendants merely conclude, without sufficient analysis, that this Court, with regard to the LAD claim, should follow the Second Circuit's *Rothschild* Rehabilitation Act analysis. Of course, it is far from certain as to whether this Court would follow *Rothschild* with regard to LAD claims in the context of discrimination in public services.

## IV. Intentional Infliction of Emotional Distress

■ Lastly, the Sotos allege a claim of intentional infliction of emotional distress. Defendants point out, however, that public entities may not be held liable for intentional or wrongful acts of its employees. The Sotos fail to address the Defendants' argument.

■ N.J.Stat.Ann. 59:2–10 provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *See also Fuchilla v. Layman,* 109 N.J. 319, 339, 537 A.2d 652 (1988) (Handler, J., concurring) (noting that "public entities shall only be liable for their negligence within .the limitations of the Torts Claim Act"); *Kisselbach v. County of Camden,* 271 N.J.Super. 558, 561, 638 A.2d 1383 (App.Div.1994) (noting that a public entity may not be liable for intentional infliction of emotional distress); *McDonough v. Jorda,* 214 N.J.Super. 338, 350, 519 A.2d 874 (App.Div.1986) (holding that a public entity may not be held liable for intentional torts of a public employee). Therefore, the Court cannot find Defendants—public entities—liable for this intentional tort. Accordingly, the Court will grant summary judgment to Defendants on this issue, thus, dismissing the claim regarding intentional infliction of emotional distress.[14]

## CONCLUSION

In summary the Court has made the following rulings:

(1) granting Plaintiffs' partial summary judgment motion as to liability under Title II of the American with Disabilities Act;

(2) denying Defendants' summary judgment motion to dismiss Plaintiffs' claim under Title II of the American with Disabilities Act;

(3) denying Plaintiffs' partial summary judgment motion as to liability under Section 504 of the Rehabilitation Act;

(4) granting Defendants' summary judgment motion to dismiss Plaintiffs' claim under Section 504 of the Rehabilitation Act;

(5) denying Plaintiffs' partial summary judgment motion as to liability under the New Jersey Law Against Discrimination;

(6) denying Defendants' summary judgment motion to dismiss Plaintiffs' claim under the New Jersey Law Against Discrimination;

(7) granting Defendants' summary judgment motion to dismiss Plaintiff's claim for intentional infliction of emotional distress;

Furthermore, the Court hereby refers the parties to Magistrate Judge Pisano for appropriate actions with regard to the remaining matters. An appropriate Order is attached.

## ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 29th day of October, 1999, ORDERED as follows:

(1) Plaintiffs' partial summary judgment motion as to liability under Title II of the American with Disabilities Act is granted;

(2) Defendants' summary judgment motion to dismiss Plaintiffs' claim under Title II of the American with Disabilities Act is denied;

(3) Plaintiffs' partial summary judgment motion as to liability under Section 504 of the Rehabilitation Act is denied;

(4) Defendants' summary judgment motion to dismiss Plaintiffs' claim under Section 504 of the Rehabilitation Act is granted;

---

**14.** The Court will also dismiss the Sotos' Rehabilitation Act claim. This Rehabilitation Act only applies when a public entity receives Federal funding. *See* 29 U.S.C. § 794. Here, Defendants offer proof that the Municipal Court receives no federal funding. (Anderson Certif. ¶ 5). The Sotos offer no evidence refuting Defendants' contention.

(5) Plaintiffs' partial summary judgment motion as to liability under the New Jersey Law Against Discrimination is denied;

(6) Defendants' summary judgment motion to dismiss Plaintiffs' claim under the New Jersey Law Against Discrimination is denied; and

(7) Defendants' summary judgment motion to dismiss Plaintiff's claim for intentional infliction of emotional distress is granted; and it is

FURTHER ORDERED that the parties are hereby referred to Magistrate Judge Pisano for appropriate actions with regard to the remaining matters.