Jeffrey **BRAVIN** and Ethan Raymond Bravin, an infant by his father and natural guardian, Jeffrey Bravin, The Civil Association of the Deaf of New York City, Inc. (also known as the New York City Civic Association of the Deaf), Stephen G. Younger, II, President, on behalf of themselves and on behalf of all others similarly situated, Plaintiffs,

v.

**MOUNT SINAI MEDICAL CENTER, Defendant.**

**No. 97 Civ. 7034(RWS).**

United States District Court, S.D. New York.

April 14, 1999.

Law Offices of Alan J. Rich, New York City, by Alan J. Rich, of counsel, for plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, by Ricki Roer, Laura Alfredo, of counsel, for defendant.

## OPINION

SWEET, Senior District Judge.

In this class action brought pursuant to the Americans with Disabilities Act of 1990 (the "ADA") 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act of 1973 (the "RA"), 29 U.S.C. § 794, the New York State Human Rights Law, Executive Law § 292 *et seq.* (the "NYSHRL"), the New York City Civil Rights Law, New York City Administrative Code Title VII, § 8–102 *et seq.* (the "NYCHRL"), and 10 NYCRR, Chapter V, § 405.7, defendant Mount Sinai Medical Center ("Mt. Sinai") has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint in this action. Plaintiffs Jeffrey Bravin ("Bra-

vin"), Ethan Raymond Bravin, Stephen G. Younger II ("Younger") and the Civic Association of the Deaf of New York City, Inc. a/k/a/ the New York City Civic Association of the Deaf ("NCCAD") (collectively, "Plaintiffs") have moved; (1) for partial summary judgment, pursuant to Fed.R.Civ.P. 56, with respect to Mt. Sinai's liability resulting from its denial of a qualified sign language interpreter to Bravin for a Lamaze class conducted at Mt. Sinai and attended by Bravin and his wife; (2) to file a Second Amended Complaint; and (3) for class certification pursuant to Fed.R.Civ.P. 23.

For the reasons set forth below, Mt. Sinai's motion to dismiss is granted in part and denied in part. Plaintiffs' motion for summary judgment is granted, the motion to file a Second Amended Complaint is granted in part and denied in part, and the motion for class action is denied.

### The Parties

Bravin is deaf and is the father and natural guardian of plaintiff Ethan Raymond Bravin. Bravin is a teacher of deaf children in a school in Queens, New York.

Putative plaintiff Naomi Bravin is the wife of Bravin and the mother of plaintiff Ethan Raymond Bravin.

Younger is deaf and is the president of NCCAD, a New York not-for-profit corporation. NCCAD is the largest deaf-run organization for advocacy of deaf people in New York City. It is a local chapter of the National Association of the Deaf and the Empire State Association of the Deaf. Its members consider it a "watch dog" on city-wide issues, problems, and needs of people who are hearing impaired.

Mt. Sinai maintains a hospital and medical facility rendering medical services to the public at One Gustave Levy Place, New York, New York, 10029 (the "Medical Center").

### Prior Proceedings

Bravin filed this action on September 19, 1997, and on that day moved, by Order to Show Cause, for a preliminary injunction to compel Mt. Sinai to make immediately available a qualified sign language interpreter for meetings between Bravin and doctors or other primary care givers and to continue such availability while his son was in Mt. Sinai's Neo–Natal Intensive Care Unit ("NICU").

The motion was withdrawn when Mt. Sinai apparently agreed to provide the interpreter, and on September 26, 1997 an order was entered on stipulation providing for an interpreter as requested.

On April 30, 1998, Bravin filed an amended complaint (the "First Amended Complaint") adding plaintiffs Younger and NCCAD.

Mt. Sinai filed the instant motion to dismiss on June 10, 1998. On October 14, 1998, Plaintiffs filed their motions for partial summary judgment, to file a Second Amended Complaint, and for class certification. Oral argument was heard on January 20, 1999, at which time the motions were deemed fully submitted.

### Facts

In considering a motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992); *Rubin v. Tourneau, Inc.*, 797 F.Supp. 247, 248 (S.D.N.Y.1992). Accordingly, the factual allegations considered here and set forth below are taken from Plaintiffs' First Amended Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion.

Bravin is a profoundly deaf man who uses American Sign Language ("ASL") to communicate. Prior to the delivery of the Bravin's baby, the Bravins attended Lamaze classes conducted at Mt. Sinai. The classes were in anticipation of the birth of their child, which was also planned to be at Mt. Sinai. Bravin requested a sign language interpreter in order to understand the lecturer at the Lamaze classes. Mt. Sinai denied the request as Bravin was not the "patient."

Bravin obtained a policy letter from the United States Department of Health and Human Services ("HHS") which allegedly "ex-

plain[ed] the right to an interpreter for the Lamaze classes and for the hospital stay of his immediate family members." (First Amended Complaint ¶ 45) Although Bravin provided Mt. Sinai with this letter, it refused to provide any interpreting services for the Lamaze class. Mt. Sinai did, however, agree to provide an interpreter for the birth process.

On September 13, 1997, Bravin's wife was admitted to Mt. Sinai and his son was born. Immediately after his birth, Bravin's son was transferred to Mt. Sinai's NICU. According to Bravin, he requested a sign language interpreter on September 16. Mt. Sinai denied the request as Bravin was not a patient, but agreed to provide an interpreter in the event of an emergency. On September 17, the hospital offered Bravin the use of a TTY device,[1] which was never provided.

## Discussion

### I. Relevant Statutes

#### A. The ADA

Under the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Subject to certain defenses, discrimination under the ADA includes:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

42 U.S.C. § 12182(b)(2)(A)(iii).

The Department of Justice implementing regulations provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c). Examples of auxiliary aids include:

> Qualified interpreters, note-takers, computer aided transcription services, written materials, telephone handset amplifiers, assistive listening systems, telephones compatible with hearings aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDDs), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.

28 C.F.R. § 36.303(b)(1).

#### B. The RA

Under the RA:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). Under the implementing regulations to the RA:

> A recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care.

45 C.F.R. § 84.52(c). If the recipient hospital employs fifteen or more persons, it "shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1).[2]

---

**1.** As described by this Court in *Clarkson v. Coughlin*, 898 F.Supp. 1019, 1027 (S.D.N.Y. 1995), a TTY/TDD is a "device which uses the electronic transmission of text to allow deaf persons to communicate via telephone, with deaf persons or hearing persons who have access to a TDD, or with hearing persons who do not have a TDD, via third party relay service."

**2.** The NYSHRL and the NYCHRL substantially resemble the ADA and RA. There is no difference between the rights granted under these statutes. *See Mohamed v. Marriott International, Inc.*, 905 F.Supp. 141, 157 (S.D.N.Y.1995).

## II. *Mt. Sinai's Motion to Dismiss is Granted in Part and Denied in Part*

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. 1683; *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir.1969).[3]

### A. *Injunctive Relief*

■■ Mt. Sinai submits that Plaintiffs' claims for injunctive relief under the ADA and the RA must be dismissed as a matter of law as Plaintiffs do not have standing. Plaintiffs have the burden of establishing that they have standing to raise the claims asserted. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). However, in considering a challenge to standing, a court takes as true all material allegations of the complaint and construes the complaint in favor of the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citation omitted).

■■ The Supreme Court has developed a three-part test to determine whether a plaintiff has standing to bring a claim. *See Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. First, the plaintiff must establish that he suffered an "injury in fact," which is defined as "an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations

omitted). Second, there must be a causal connection between the injury and the conduct complained of. *Id.* Finally, a plaintiff must show that it is likely that the injury will be redressed by a favorable decision *Id.* "These elements are the 'irreducible minimum' required by the Constitution." *Northeastern Fla. Chapter of the Associated Gen. Contractors v. Jacksonville*, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (*quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

■■ In order to establish an injury in fact necessary to a claim for injunctive relief, the moving party must demonstrate that a defendant's conduct is causing irreparable harm. *See Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir.1992). This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again. *See id.* (*quoting Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)); *see also Farmland Dairies v. McGuire*, 789 F.Supp. 1243, 1250 (S.D.N.Y.1992) (stating that to obtain injunctive relief based on past injury, the plaintiff must show a real and immediate threat that the injury will be continued or repeated). While past wrongs may be evidence bearing on whether there is a real and immediate threat of repeated injury, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by an continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Accordingly, "there must be sufficient immediacy, reality and causality between defendant's conduct and plaintiffs' allegations of future injury" to warrant injunctive relief. *Weiser v. Koch*, 632 F.Supp. 1369, 1373 (S.D.N.Y.1986).

---

**3.** Plaintiffs have attached certain exhibits and affidavits to their opposition papers and attempt to rely on facts that are not pleaded in the First Amended Complaint. Because on a Rule 12(b)(6) motion consideration is limited to the factual allegations in the complaint, "to documents attached to the complaint as an exhibit or

incorporated in it by reference," *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), these facts, affidavits and exhibits will not be considered in deciding the instant motion.

### 1. Standing of Bravin and Ethan Raymond Bravin

■ The Bravins, the only individuals [4] alleged to have suffered a concrete harm resulting from Mt. Sinai's violation of the ADA and the RA, have failed to establish a "real and immediate threat" of future harm. *Lyons*, 461 U.S. at 111, 103 S.Ct. 1660. The allegations in the First Amended Complaint involving several instances where Mt. Sinai failed to provide Bravin with effective communication combined with Mt. Sinai's purported "policy" of not providing qualified interpreters to non-patients are sufficient, for pleading purposes, to demonstrate that if the Bravins were to go to Mt. Sinai again, it would fail to provide Bravin with effective communication. However, this is not enough to satisfy Plaintiffs' burden to demonstrate standing to seek injunctive relief. The Bravins must show that there is a likelihood that they will require the services of Mt. Sinai in the near future. *See Schroedel v. New York University Medical Center*, 885 F.Supp. 594 (S.D.N.Y.1995) (court denied claims of hearing impaired plaintiff on grounds that plaintiff "had not established a real and immediate threat of repeated injury sufficient to confer standing for injunctive relief."); *Naiman v. New York University*, 1997 WL 249970 at *5 (S.D.N.Y. May 13, 1997) (court dismissed plaintiff's claims and held that he lacked standing to claim injunctive relief as plaintiff failed to show " 'a real or immediate threat' that he will require the services of NYUMC in the future.").

■ Plaintiffs appear to concede that the Bravins do not have standing to bring a claim for injunctive relief, but posit instead that NCCAD and Younger, as president of NCCAD, do have standing. While noting that it is often difficult for an individual plaintiff to establish standing for injunctive relief, Plaintiffs maintain that they "need not deal with the problems of individual (*sic*) exclusively since organizational standing is the issue." (Plaintiffs' Reply Brief at 7). However, NCCAD's standing to seek injunc-

tive relief suffers from the same defects as that of the Bravins. Moreover, the Bravins cannot salvage their claims for injunctive relief by contending that other plaintiffs have standing to bring those claims. It is well established that a named plaintiff must have standing in order to sustain a claim, and as this Court has stated, "a plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law." *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 548 (S.D.N.Y. 1995); *cf. Dietrich v. Bauer*, 1999 WL 126438 at *5, —— F.Supp. —— at —— (S.D.N.Y. March 10, 1999).

### 2. Standing of NCCAD

■ The Supreme Court has held that an association has standing to bring suit on behalf of its members when: (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted or relief sought requires the individual participation of the members in the lawsuit. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Furthermore, the Court specifically has found that associations may seek injunctive relief because "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. 2197.

■ Plaintiffs allege that NCCAD acts as a "watch dog" on issues, problems and needs of people with hearing loss in New York City and the metropolitan area, and that Younger and NCCAD have long been strong advocates for the interests of the deaf community. Plaintiffs further allege that the injury and damage suffered by Bravin and Ethan Bravin are "capable of being repeated to them or other members of the class." (First Amend-

---

4. Plaintiffs assert for the first time in their Reply Brief that Stanley Siegel, a deaf man who is a member of NCCAD, and his wife Emily, who is also deaf, were repeatedly denied a qualified interpreter during two in-patient stays at Mt.

Sinai by Mr. Siegel in 1997. However, these facts are not alleged in the First Amended Complaint (nor in the Proposed Second Amended Complaint) and will not be considered here.

ed Complaint ¶ 59).[5]

While these allegations may be sufficient to satisfy the second and third requirements for associational standing, see *Aikins v. St. Helena Hospital*, 843 F.Supp. 1329, 1334 (N.D.Ca.1994), they fail to show that NCCAD's members would have standing to sue in their own right. The only member of NCCAD mentioned in the First Amended Complaint is Bravin and, as discussed above, he does not have standing to seek injunctive relief.

Plaintiffs rely on this Court's holding in *United Transportation Union Local Unions 385 and 77 v. Metro–North Commuter Railroad Company*, 1995 WL 634906 (S.D.N.Y. October 30, 1995), for the proposition that in cases of statutory right, standing depends on "whether the ... statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." 1995 WL 634906 at *3 (*quoting Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. 2197). While the Court noted that "[c]onsideration of the particularized injury requirement *begins* ... with the statutory context out of which the claimed injuries arise," 1995 WL 634906 at *3 (emphasis added), the inquiry does not end there. Thus, although Plaintiffs are correct

that the ADA, the RA, New York State and New York City law prohibit discrimination against people with disabilities and require that reasonable accommodations be provided, a violation of any or all of these statutes, standing alone, cannot confer standing. As noted above, solely past exposure to illegal conduct is insufficient to confer standing for injunctive relief. *See O'Shea*, 414 U.S. at 495–96, 94 S.Ct. 669. Rather, in order to obtain injunctive relief based on past injury, Plaintiffs must show a real and immediate threat that the injury will be continued or repeated. *See Farmland Dairies*, 789 F.Supp. at 1250.

Plaintiffs urge without specification that NCCAD's members are suffering and will continue to suffer injury as a result of Mt. Sinai's "discriminatory conduct." [6] However, assertions that Mt. Sinai's "policy" of refusing to provide interpreting services to deaf and hard-of-hearing people amounts to an actual, concrete, and particularized injury to NCCAD's membership, without any relevant supporting facts as to the identity or numbers of members affected, are insufficient. Plaintiffs have failed to show that some members of NCCAD have had or are going to have a cause of action against Mt. Sinai.[7]

---

**5.** Plaintiffs' Proposed Second Amended Complaint provides more substantive information pertaining to NCCAD's ability to maintain associational standing. However, as discussed more fully below, the proposed pleadings involving NCCAD's standing are futile as they do not establish the first requirement for associational standing.

**6.** Plaintiffs, in their Memorandum of Law, extrapolate from statistics pertaining to New York City's deaf population and Mt. Sinai's patient population and estimate that annually anywhere from 1,840 to 6,680 deaf and hearing impaired persons use Mt. Sinai's Emergency Room, between 966 and 3,612 deaf and hearing-impaired persons make in-patient visits, and between 6,900 and 25,800 deaf and hearing-impaired persons make out-patient visits. These facts are not alleged in either the First Amended Complaint or the Proposed Second Amended Complaint and cannot be considered with respect to the instant motion to dismiss.

**7.** In their Proposed Second Amended Complaint, Plaintiffs allege that "[d]ue to the fluid composition of the patients and those with a relationship to or association with of [*sic*] at defendant hospital, the claims might evade review despite **the**

fact that the underlying claims tend to remain." (Proposed Second Amended Complaint ¶ 28) (emphasis in original). In order to show that an action is not moot under the "capable of repetition yet evading review" doctrine, a party must show that: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation and expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to that same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *see also Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996). Plaintiffs' claims with respect to the denial of effective communication for the Lamaze class and during Ethan Bravin's treatment in the NICU arguably evade review as both pregnancy and hospital stays are time limited. *See Board of Educ. v. Rowley*, 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (student's claim under Education of the Handicapped Act for preceding school year not moot because claim may arise in subsequent years and "[j]udicial review invariably takes more than nine months to complete."); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 ("the normal 266–day human gestation period is so short that the pregnancy will come to term be-

Although the pleading standard on a motion to dismiss is a liberal one, "bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

Plaintiffs lack standing to seek injunctive relief. Accordingly, Plaintiffs' ADA and NYCRR claims, seeking solely injunctive relief, are dismissed in their entirety. To the extent that Plaintiffs' RA, New York State Human Rights Law and New York City Human Rights Law claims seek injunctive relief, they are also dismissed. Plaintiffs are granted leave to replead within thirty days in accordance with this decision.

### B. *Damages*

█ Plaintiffs allege that Mt. Sinai has discriminated against Bravin and that by its failure to provide him "auxiliary aids and services" has denied him the benefit of fair and equal access to medical services in violation of § 504 of the RA. Specifically, Plaintiffs allege that Bravin was denied the use of a qualified interpreter for use during the Lamaze classes he attended with his wife and during his son's stay in the NICU. Plaintiffs claim that as a result of Mt. Sinai's violation, Bravin was damaged in the amount of one million dollars. Plaintiffs further allege that Ethan Bravin was deprived of the right to "have his father involved in the medical care process." (First Amended Complaint ¶ 73) and seek nominal damages in the amount of $50,000. Mt. Sinai contends that Plaintiffs' claims for monetary damages under the RA must be dismissed.

The RA provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794.

The Second Circuit has held that to state a claim under the RA, plaintiffs must establish that: (1) they are "handicapped persons" under the RA; (2) they are "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; (3) they are being excluded from participation or enjoyment solely by reason of their disability; and (4) the entity denying plaintiffs participation or enjoyment receives federal financial assistance. *See Rothschild v. Grottenthaler*, 907 F.2d 286, 289–90 (2d Cir.1990); *Clarkson v. Coughlin*, 898 F.Supp. 1019, 1036 (S.D.N.Y.1995). Only the third of these criteria is in dispute.

Mt. Sinai notes that something more than an inadvertent omission is required to articulate a proper claim of discrimination under the RA, and cites *Bartlett v. New York State Board of Law Examiners*, 970 F.Supp. 1094 (S.D.N.Y.1997), *aff'd in part, vacated in part on other grounds*, and *remanded* 156 F.3d 321 (2d Cir.1998), for the proposition that "[m]ost, but not all, courts agree that compensatory damages are recoverable under [the RA] only in cases involving intentional discrimination." Mt. Sinai claims that there is no evidence of intentional discrimination in the present action.

█ In the context of the RA, intentional discrimination against the disabled does not require personal animosity or ill will. *See Bartlett v. New York State Board of Law Examiners*, 156 F.3d at 331 (*citing Tyler v. City of Manhattan*, 118 F.3d 1400, 1406 (10th Cir.1997)). Intentional discrimination may be inferred when a "policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy ... [or] custom." *Bartlett*, 156 F.3d at 331 (quoting *Ferguson v. City of Phoenix*, 931 F.Supp. 688, 697 (D.Ariz.1996), *aff'd and remanded*, 157 F.3d 668 (9th Cir.1998)).

In *Naiman v. New York University*, 1997 WL 249970, the Honorable Lawrence M. McKenna denied defendant's motion to dismiss plaintiff's RA claim, stating that "[a]ssuming that intent is a prerequisite for monetary relief under the RA, Naiman's allegation that he requested a qualified interpreter, which was not provided, coupled

fore the usual appellate process is complete."). However, on this record, Plaintiffs have failed to

satisfy the second prong of the test.

with the absence of any allegation that NYU attempted to provide Naiman with effective communication, sufficiently alleges intent." 1997 WL 249970 at *5.

Mt. Sinai seeks to distinguish *Naiman* maintaining that unlike the defendant in that case, it did attempt to provide Bravin with effective communication. Specifically, Mt. Sinai maintains that TTYs (also called TTDs) were available to Bravin at all times, that Mt. Sinai authorized an interpreter for Bravin in the delivery room, and that it authorized an interpreter in the event of an emergency in the NICU. Mt. Sinai maintains that TTY/TDDs are the accepted primary means of communication for the hearing impaired, and urges that Plaintiffs may not premise their claims of intentional discrimination upon Bravin's preference for an ASL interpreter over a TTY.

While the First Amended Complaint alleges that a TTY was never provided, Plaintiffs appear to concede that TTY/TDDs were available at the Medical Center. However, Plaintiffs maintain that no provision for accommodations was made by Mt. Sinai in connection with the Lamaze classes and that the provision of a TTY does not constitute effective communication. Plaintiffs aver that the TTY is a proper means for deaf people to communicate telephonically, but that given the "electronically primitive" nature of the device, it is completely inappropriate for a hospital setting where communication is often time sensitive, complicated and emotionally charged.

██ Mt. Sinai is correct that the RA does not necessarily require public entities to provide ASL interpreters to deaf individuals in every instance, and that it was required only to provide "reasonable and effective" means of communication. What constitutes "effective communication" is a question of fact, *see Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131 (2d Cir.1995); *Mohamed*, 905 F.Supp. 141, and is not appropriately disposed of on a 12(b)(6) motion. At this stage, taking all factual allegations in the First Amended Complaint as true, Plaintiffs state a claim upon which relief could be granted. Accordingly, dismissal as to Plaintiffs' damage claims is inappropriate at this time.

## C. *Supplemental Jurisdiction*

Mt. Sinai requests that this Court decline to exercise supplemental jurisdiction over Plaintiffs' State and City Human Rights Law claims. The exercise of supplemental jurisdiction over nonfederal claims is governed by 28 U.S.C. § 1367. Section 1367(a) provides in relevant part, that:

Except as provided in subsection[ ] ... (c), in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

██ A non-federal claim is part of the same constitutional "case" under Article III if it derives from the same "common nucleus of operative fact" as the federal claim. *United ed Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiffs' state and city discrimination claims against Mt. Sinai are based on the same "common nucleus of operative fact" as their federal claims, and thus this Court has power to hear the pendent law claims. As the Court declines to dismiss, in their entirety, the federal law claims that confer supplemental jurisdiction over the New York State and City Law claims, Mt. Sinai's motion with respect to the pendent claims is denied at this time.

## III. *Plaintiffs' Motion for Summary Judgment is Granted*

Plaintiffs submit that Bravin is entitled to partial summary judgment with respect to Mt. Sinai's liability resulting from its denial of a qualified interpreter to Bravin for use during Lamaze classes conducted at Mt. Sinai.

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law." *Silver v. City University*, 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). If there is any evidence in the record regarding the issues on which summary judgment is sought from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Knowles v. New York City Dept. of Corrections*, 904 F.Supp. 217, 220 (S.D.N.Y.1995).

A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). Rather, the responding party "must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564 (S.D.N.Y.1995). In the absence of any disputed material fact, summary judgment is appropriate.

Plaintiffs maintain that there is no genuine issue of material fact that Bravin requested a qualified interpreter and that Mt. Sinai denied his request. Plaintiffs urge that Bravin had a "right" to a qualified interpreter and contends that Mt. Sinai has conceded that Bravin had such a right. Plaintiffs point to a Stipulation and Order withdrawing Plaintiffs' Order to Show Cause (the "Stipulation"), dated September 26, 1997, which provides in relevant part:

> WHEREAS plaintiff moved by Order to Show Cause for injunctive relief of provision of qualified sign language interpreting services to plaintiff, and

> WHEREAS defendant consents to provide same forthwith, the within motion is disposed of as follows upon consent of the parties,

> IT IS HEREBY ORDERED that defendant shall provide qualified sign language interpreters to plaintiff as required by law for effective communication with staff and physicians at defendant's medical center.

Plaintiffs seize upon the "required by law" language, and posit that the Stipulation is "an admission of liability that plaintiff had the right to qualified sign language interpreting services." (Plaintiffs' Brief at 20). Plaintiffs reason that if Bravin had a "right" to a qualified interpreter for the day of the delivery of his son, he "did not have any less of a right to an interpreter for the purpose of participating in Lamaze classes given by defendant." (*Id.*) However, this jump in logic is not supported by the record.

While the parties dispute what was and was not covered by the Stipulation, it seems clear that the Stipulation pertained to the prospective provision of qualified interpreting services as needed by Bravin during the time after the birth of his son. Nowhere on the face of the Stipulation is there any direct or indirect admission of liability concerning the Lamaze classes. The question thus remains as to whether Bravin was entitled to a qualified interpreter as a matter of law.

Congress passed the ADA in 1990 to prohibit discrimination against persons with disabilities. 42 U.S.C. § 12101. Title II of the Act, which prohibits discrimination against disabled persons in public services provides in part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The precursor to the ADA was Section 504 of the RA which states:

> [N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any pro-

gram or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794.

The similarity between the ADA and the RA is not limited to the wording of these two sections. Congress also directed that the Department of Justice promulgate regulations pursuant to the ADA that would be consistent with the provisions of the RA. *See* 42 U.S.C. § 12134(b); *Henrieta D. v. Giuliani*, 1996 WL 633382 (E.D.N.Y. October 25, 1996). While the ADA regulations are not all replicas of the RA, the regulations implementing Title II "confirm the uniformity of interpretation between the ADA and the RA." *Lincoln CERCPAC v. Health and Hospitals Corp.*, 920 F.Supp. 488, 497 (S.D.N.Y. 1996) (*citing* 28 C.F.R. § 35.103). Those ADA regulations provide, in part:

A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others.

28 C.F.R. § 35.130(b)(1).

As a result of the overlap between the ADA and the RA, their "substantive standards for determining liability are the same." *McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92, 95 (3d Cir.1995); *see also Lincoln CERCPAC*, 920 F.Supp. at 497; *Clarkson v. Coughlin*, 898 F.Supp. at 1037 (*citing Martin v. Voinovich*, 840 F.Supp. 1175, 1192 (S.D.Ohio 1993)). Similarly, there is no difference between the quantum of elements of proof required by

the ADA and the NYSHRL and NYCHRL. *See Mohamed*, 905 F.Supp. at 156–57; *Sogg v. American Airlines, Inc.*, 193 A.D.2d 153, 603 N.Y.S.2d 21 (1st Dep't 1993); *Buckhout v. New York City Comm'n on Human Rights*, 203 A.D.2d 67, 609 N.Y.S.2d 608 (1st Dep't 1994).

Plaintiffs contend that Mt. Sinai offers a series of Lamaze classes for a fee which was paid by Bravin, and that these classes are a "service" from which both Bravin and Naomi Bravin wished to benefit. Plaintiffs further allege that without an interpreter, Bravin could not have understood the classes and been "afford[ed] ... an equal opportunity to benefit from the service in question." Plaintiffs point to an opinion letter obtained by Bravin from the United States Department of Health and Human Services which stated that:

if pre-natal classes are offered as a service to both husbands and wives, a hearing impaired husband must be provided with auxiliary aids so as to afford him the same opportunity to benefit from the services as non-handicapped husbands.

Mt. Sinai counters that it was not obligated to retain an interpreter because the Lamaze classes were not "offered" to Bravin, but rather only to "mothers-to-be."

Mount Sinai, as a "public accommodation," was providing a service—Lamaze classes—to mothers-to-be and their chosen partners, in this case, Bravin, a qualified individual with a disability who paid for that service. While Mt. Sinai is undoubtedly correct that Bravin could not attend the classes by himself, neither could Mrs. Bravin attend the classes by herself. She was required to have a "birthing partner," and, like many, if not most women in her position, she chose her husband. Accordingly, it would appear that in order to allow Bravin to participate in and benefit from the service being provided, Mt. Sinai was required to make some reasonable accommodation for Bravin. *See Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (the RA requires that "an otherwise qualified handicapped individual [ ] be provided with meaningful access to the benefit that the grantee offers. . . . [T]o assure meaningful access, reasonable accommo-

dations in the grantee's program or benefit may have to be made."); 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity.")

To say that a reasonable accommodation is required, however, does not necessarily mean that Bravin was entitled to a qualified interpreter. As the Supreme Court has noted with reference to the RA, any interpretation of that act "must ... be responsive to two powerful yet countervailing considerations— the need to give effect to statutory objectives and the desire to keep § 504 within manageable bounds." *Alexander v. Choate*, 469 U.S. at 298, 105 S.Ct. 712. Most courts that have addressed the issue have noted that a reasonable accommodation is both moderate and not unduly burdensome. *See e.g., Rothschild*, 907 F.2d at 293; *Easley v. Snider*, 36 F.3d 297, 305 (3d Cir.1994).

In *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, the Second Circuit, reviewing a grant of summary judgment in favor of the defendant in a RA claim of employment discrimination based on disability, set forth a framework within which reasonable accommodation claims can be analyzed.

On the issue of reasonable accommodation, *Borkowski* places on the plaintiff the burden of persuasion that a potential accommodation exists. Plaintiffs have set forth sufficient evidence to persuade a finder of fact that such accommodation, in this case a qualified interpreter, existed.

> Whether a proposed accommodation is reasonable, however, is another question. "Reasonable" is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce. This requires an inquiry not only into the benefits of the accommodation but into its costs as well.... In short, an accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce.

*Id.* at 138 (citations omitted). As to the reasonableness of the accommodation, "the plaintiff bears only a burden of production," *Id. (citing Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991)), and that burden:

> is not a heavy one .... It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a *prima facie* case showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant.

*Borkowski*, 63 F.3d at 138. Plaintiffs have met their burden of production with regard to the reasonableness of Mt. Sinai's providing him with a qualified interpreter for the Lamaze classes. Mt. Sinai admits that does employ qualified ASL interpreters and that it provides a variety of auxiliary aids to the hearing impaired.

That the provision of a qualified interpreter is a reasonable accommodation is buttressed heavily by the language of the ADA itself, which reads " 'Reasonable accommodation' may include ... the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities". 42 U.S.C. § 12111(9).

The burden of persuasion thus now falls upon Mt. Sinai under *Borkowski*. Mt. Sinai contends that it has a long standing policy and practice of accommodation and that reasonable accommodation was afforded to Bravin in this case. However, as a matter of fact in the context of Lamaze classes a qualified interpreter is a reasonable accommodation, and perhaps the only reasonable accommodation, that would enable Bravin to participate in and benefit from the Lamaze classes.

Continuing the *Borkowski* analysis:

> At this point the defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship. For in practice meeting the burden of nonpersua-

sion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing.

63 F.3d at 138 (*citing School Bd. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). The statute defines undue hardship as follows:

(A) In general: The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B).

(B) Factors to be considered: In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include:

(i) the nature and cost of the accommodation needed under this chapter;

(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

While Mt. Sinai has alluded to an undue hardship, it has not addressed the issue explicitly and Mt. Sinai has offered no material fact as to the unreasonableness of Bravin's proposed accommodation. Moreover, Mt. Sinai does not allege that it provided Bravin with *any* accommodation for the Lamaze classes. Accordingly, summary judgement is appropriate with respect to Mt. Sinai's liability resulting from its failure to accommodate Bravin.

### IV. *Plaintiffs' Motion for Class Certification is Denied*

Plaintiffs seek, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1) and (b)(2), to certify a class of similarly situation individuals. Plaintiffs proposed class would include "all persons who are deaf or have hearing loss and require reasonable accommodation in communication and such persons with a relationship or association with such persons with hearing loss." Given that Plaintiffs lack standing to seek injunctive relief, its motion for class certification will not be considered. *See Schroedel,* 885 F.Supp. at 600.[8]

### V. *Plaintiffs' Motion to File a Second Amended Complaint is Granted in Part and Denied in Part*

Plaintiffs seek to amend their complaint to include Naomi Bravin as a named plaintiff and to "clarify the language contained therein to comport with associational standing requirements." (Plaintiffs' Brief at 69).

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." The decision to grant or deny the filing of an amended pleading, however, is within the sound discretion of the trial court. *See Zenith Radio Corporation v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Katz v. Morgenthau,* 892 F.2d 20, 22 (2d Cir.1989). The Supreme Court has interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir.1994); *Pru-*

---

8. Although it is not entirely clear from the First Amended Complaint whether the Bravins assert their damage claims on behalf of the proposed class, it appears that the claims for damages are unique to Bravin and Ethan Bravin.

*dential Ins. Co. v. BMC Indus., Inc.*, 655 F.Supp. 710, 711 (S.D.N.Y.1987).

 Mt. Sinai contends that the proposed complaint would be futile. An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank–New York*, 494 F.2d 1334, 1338 (2d Cir.1974). As noted above, Plaintiffs have failed to satisfy the requirements of associational standing, *see Hunt*, 432 U.S. at 343, 97 S.Ct. 2434, and the proposed "clarification" does not remedy this defect. The proposed second amended complaint does not establish that the members of NCCAD have standing to sue in their own right. Accordingly, Plaintiffs' motion to amend is denied with respect to the proposed language regarding associational standing.

With respect to the addition of Mrs. Bravin, however, Plaintiffs' motion is granted. Mrs. Bravin claims that she was discriminated against due to her "relationship or association" with Bravin, a person with a disability and a "qualified individual" pursuant to 28 C.F.R. § 36.205. The new claims interposed by Mrs. Bravin state an appropriate cause of action.

As discussed above, Plaintiffs' damage claims under the RA, the NYSHRL and the NYCHRL are sustained. The facts surrounding Mrs. Bravin's cause of action arise out of the same facts as those in the underlying action. As such, Mt. Sinai is not being confronted with new issues of which it did not have notice. In view of the fact that no answer has been filed, and no discovery has taken place in this case, Plaintiffs have not unduly delayed or prejudiced Mt. Sinai in bringing this motion. *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir.1991); *Mohamed*, 905 F.Supp. at 149.

### Conclusion

For the reasons stated above, Mt. Sinai's motion to dismiss is granted in part and denied in part. Specifically, Plaintiffs' claims for injunctive relief are dismissed for lack of standing, and Plaintiffs' claims for damages are sustained. Plaintiffs' motion for summary judgment is granted, the motion to amend is granted in part and denied in part, and the motion for class action is denied. Plaintiffs are granted thirty days to replead in accordance with this decision.

It is so ordered.