In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00153-CR
______________________________


JASON MATTHEW EATON, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 20492


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â A jury found Jason Matthew Eaton guilty of felony driving while intoxicated (DWI). See
Tex. Pen. Code Ann. Â§ 49.04 (Vernon 2003), Â§ 49.09 (Vernon Supp. 2005). The trial court
assessed punishment at ten years' imprisonment. Eaton now appeals contending the trial court erred
"by including a synergistic alcohol effect jury instruction when there was no evidence sufficient to
raise it." For the reasons set forth below, we affirm.
Â Â Â Â Â Â Â Â Â Â Â Â "When jury charge error is claimed, we are to determine first whether there was error. If we
find error and if . . . the error was preserved by objection, we then determine whether 'some harm'
resulted from the error." McNatt v. State, 152 S.W.3d 645, 654 (Tex. App.âTexarkana 2004)
(mem. op.) (not designated for publication), rev'd on other grounds, 188 S.W.3d 198 (Tex. Crim.
App. 2006) (citing Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Abdnor v. State,
871 S.W.2d 726, 731â32 (Tex. Crim. App. 1994)). 
Â Â Â Â Â Â Â Â Â Â Â Â In its proposed jury charge, the trial court included the following:
You are instructed that if a person by the use of medications renders himself more
susceptible to the influence of alcohol then [sic] he otherwise would have been and
by reason thereof became intoxicated from recent use of alcohol; he would be in the
same position as though his intoxication was produced by the use of alcohol alone.
Eaton, through trial counsel, objected to this instruction, stating, "Only objection I have, Judge, is
paragraph three -- or section three, about the synergistic effect of alcohol in the case. There's no
evidence that he was on any type of medication at the time the alleged event occurred." The trial
court overruled this objection and included the instruction in its final charge to the jury. 
Â Â Â Â Â Â Â Â Â Â Â Â During the State's case-in-chief, Trooper Ricardo Landeros testified that, at the time of
Eaton's arrest, Eaton admitted "that he was taking an antibiotic, and [that] he shouldn't be mixing
alcohol with antibiotic medication." Pamela Ray Eaton, a licensed vocational nurse and the
appellant's wife, was asked, "Was Mr. Eaton on any type of medication at that time?" She answered,
"Yes, he was," and described the medications as prescription strength Benadryl, Ultram (a
nonnarcotic pain medication), and Keflex (an antibiotic) to treat several spider bites Eaton had
recently received. She agreed that pain medicine should not be mixed with alcohol. This testimony,
argues the State, is some evidence Eaton was on medication when Trooper Landeros made the traffic
stop and, therefore, supports the trial court's decision to include the jury instruction now at issue. 
We agree.
Â Â Â Â Â Â Â Â Â Â Â Â The Texas Court of Criminal Appeals has expressly authorized jury instructions on the
synergistic effect of drugs and alcohol in DWI cases where there is some evidence presented at trial
that the accused's loss of the normal use of his or her mental and/or physical faculties due to alcohol
consumption was enhanced or worsened because the accused had also consumed drugs. Gray v.
State, 152 S.W.3d 125, 127â34 (Tex. Crim. App. 2004). In Gray, the defendant had been charged
with DWI by reason of the introduction of alcohol into his system. Id. at 126. Evidence at trial
showed Gray had also been taking antidepressants at the time of his arrest. Id. The trial court gave
a synergistic charge quite similar to the one now at issue. Id. at 127. The Texas Court of Criminal
Appeals found no error. Id. at 133â34.
Â Â Â Â Â Â Â Â Â Â Â Â The charge in Eaton's case authorized the jury to convict only if it found the use of any drugs
made Eaton more susceptible to the effects of any alcohol he had ingested. Thus, the trial court's
charge did not permit the jury to convict Eaton on a theory unalleged in the charging instrument. Cf.
id. at 133. Accordingly, because the trial court's charge correctly applied the applicable law to the
facts adduced during trial, we find no error in the charge.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.


Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â June 5, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â June 22, 2006

Do Not Publish



e. As referenced above, the trial court sustained Pilgrim's Pride's objections to Corona's
affidavit because it was entirely hearsay. Corona's remaining summary judgment evidence consisted
of the affidavit of Suchomlinow. Suchomlinow's affidavit provides in pertinent part:

 I witnessed PILGRIM'S PRIDE CORPORATION's delivery trucks unload many cases
of meat products at my place of business parking lot (El Dorado Meat Market, 5001
Airport Blvd[.], Austin, TX 78746). I witnessed the merchandise being personally
handed Â to Â then Â CENTEX's Â employee Â Ismael Â Deleon. Â It Â was Â until Â [sic] on Â or
about May 20th, 2005 that I approached the delivery drivers and emphatically
prohibited them of making any further deliveries at my place of business since I finally
realized there was some suspicious activity going on between PILGRIM's delivery
drivers and Ismael Deleon. I told the delivery driver that I would report them if such
behavior would continue. 


Suchomlinow's affidavit merely provides some evidence that Centex employees received products
from Pilgrim's Pride at an "unauthorized" location. Suchomlinow's belief that the activity was
suspicious is less than a scintilla of evidence that the products delivered were not accepted and used
by Centex or that Centex was invoiced for any products it did not receive. There is no evidence of
negligence, fraud, breach of contract, (5) or conversion. 

 Corona also argues the debt was partially satisfied because he offered to tender assets of the
corporation to satisfy the outstanding debt. (6) There is no evidence in the record that Pilgrim's Pride
agreed to accept the corporate assets or received partial payment of the outstanding debt. Under the
terms of the guaranty agreement, Corona was an absolute guarantor of payment. Absolute guaranties
are conditioned solely on default of the principal debtor. Mid-South Telecomms. Co. v. Best, 184
S.W.3d 386, 391 (Tex. App.--Austin 2006, no pet.). An absolute guarantor is primarily liable and
waives any requirement that the creditor take action against the principal obligor as a condition
precedent to his or her liability on the guaranty. Hopkins v. First Nat'l Bank at Brownsville, 551
S.W.2d 343, 345 (Tex. 1977); Joseph Thomas, Inc. v. Graham, 842 S.W.2d 343, 345 n.2 (Tex.
App.--Tyler 1992, no writ). Because Corona was an absolute guarantor, Pilgrim's Pride was not
required to seek recovery from Centex before instituting suit against Corona.

 Corona also argues there are genuine issues of material fact concerning whether Pilgrim's
Pride permitted Centex to exceed the contractual credit limit. Corona, though, did not expressly plead
a defense based on a material alteration of the contract. On its application for credit, Centex applied
for a credit limit of $20,000.00, but Pilgrim's Pride allowed Centex to accumulate a debt of
$25,538.37. 

 Corona did not adequately raise this issue in any response before the trial court. A summary
judgment cannot be reversed on appeal due to an issue that was not expressly and timely presented
to the trial court by written response or other document. Tex. R. Civ. P. 166a(c); see Clear Creek
Basin Auth., 589 S.W.2d at 677. Corona mentions that the credit limit was exceeded while asserting
negligence as an affirmative defense. The amended response provides as follows in pertinent part:

 3. Defendants claim negligence as an affirmative defense and do not recognize
the amount on the alleged defaulted invoices and claims that Plaintiff's negligent
behavior created and compounded the alleged default. Additionally, during this
alleged default the credit line amount was raised unilaterally by Plaintiff. Defendants
never requested nor authorized such an increase so therefore it is not binding.


The fact the credit limit was exceeded is contained in a paragraph alleging negligence. Corona failed
to provide any legal argument as to the effect of exceeding the credit limit. 

 The above quotation was insufficient to expressly present the defense for a material alteration
of the contract to the trial court. While the quotation probably was sufficient to inform the trial court
of the facts complained of, the quotation is insufficient to inform the trial court of any legal effect of
those facts. We are prohibited from considering grounds the nonmovant failed to expressly present
to the trial court in a written response. Brown v. Reeter, 170 S.W.3d 151, 154 (Tex. App.--San
Antonio 2005, no pet.). To the extent Corona may have had a partial defense for a material alteration
of the contract, this issue is not preserved for our review. Further, Corona has failed to provide this
Court with any legal argument or authority as to the effect of exceeding the credit limit. As such, this
issue was also inadequately briefed on appeal. See Tex. R. App. P. 38.1.

 Because there are no genuine issues of material fact, the trial court did not err in granting
summary judgment in favor of Pilgrim's Pride.

(4) The Trial Court Was Not Required to Allow Corona to Appear by Telephone

 Corona argued that, because of his medical condition, he could not physically appear in Camp
County. Although not bedridden, Corona argued extended stays in a wheelchair could pose a severe
health risk because he is subject to decubitus ulcers. Corona argues the trial court was required to
grant his request under the Americans with Disabilities Act (ADA). The trial court permitted Corona
to attend the summary judgment hearing by telephone. At the hearing, the trial court informed Corona
he would not be allowed to continue to appear by telephone. 

 The trial court did not abuse its discretion in denying Corona's motion to appear by telephone. 
The Texas Rules of Judicial Administration permit, but do not require, courts to allow parties to
attend pretrial hearings via telephone. See Tex. R. Jud. Admin. 7a(6)(b). Title II of the ADA
provides that "no qualified individual with a disability shall, by reason of such disability, be excluded
from participation in or be denied the benefits of the services, programs, or activities of a public
entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (West 2007). To
state a claim under Title II, Corona must allege that (1) he is a "qualified individual with a disability";
(2) he is being excluded from participation in or being denied the benefits of some "services,
programs, or activities" by reason of his disability; and (3)Â the entity which provides the service,
program, or activity is a public entity. See id.; Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st
Cir. 2006); Soto v. City of Newark, 72 F. Supp. 2d 489, 492 (D.N.J. 1999). The ADA requires public
entities to provide "meaningful access" to their programs and services. Chaffin v. Kan. State Fair Bd.,
348 F.3d 850, 857 (10th Cir. 2003); see also Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999). 

 Under regulations promulgated by the Department of Justice, public entities are required to
"make reasonable modifications in policies, practices, or procedures when the modifications are
necessary to avoid discrimination on the basis of disability . . ." 28 C.F.R. Â§ 35.130(b)(7) (2003);
see 42 U.S.C.A. Â§ 12134(a) (West 2003). The regulations also provide:

 (a) A public entity shall take appropriate steps to ensure that communications with
applicants, participants, and members of the public with disabilities are as effective
as communications with others.

 (b)(1) A public entity shall furnish appropriate auxiliary aids and services where
necessary to afford an individual with a disability an equal opportunity to participate
in, and enjoy the benefits of, a service, program, or activity conducted by a public
entity.


 (2) In determining what type of auxiliary aid and service is necessary, a public entity 

 shall give primary consideration to the requests of the individual with disabilities.


28 C.F.R. Â§ 35.160 (2008). However, a public entity is not required "to take any action that it can
demonstrate would result in a fundamental alteration in the nature of a service, program, or activity
or in undue financial and administrative burdens." 28 C.F.R. Â§ 35.164 (2008).

 Corona has failed to cite any authority, nor are we aware of any, for the proposition that a
violation of the ADA voids an otherwise valid judgment. A person alleging discrimination under
Title II of the ADA has the remedies, procedures, and rights set forth in Section 505 of the
Rehabilitation Act of 1973. 42 U.S.C.A. Â§Â§ 12131-65 (West 2003); 42 U.S.C.A. Â§Â§ 2000e-5, 2000e-16 (West 2003); 29 U.S.C.A. Â Â§ Â 794a Â (West 2003); Â Am. Â Jur. Â 2d Â Americans Â with Â Disabilities Â Act
Â Analysis Â and Implications Â§ 307 (LEXIS 2007).

 It is not necessary for us to decide whether Corona's due-process rights were violated by the
alleged violation of the ADA. Assuming that a violation of the ADA could void a judgment, the First
District Court of Appeals has held the claim is an affirmative defense that must be pleaded and proved
to avoid waiver. In re C.M., 996 S.W.2d 269, 270 (Tex. App.--Houston [1st Dist.] 1999, no pet.). 
Corona failed to plead an affirmative defense based on a violation of the ADA. Even if Corona's
motion to transfer venue pled an affirmative defense based on a violation of the ADA and assuming
a violation of the ADA would void a judgment, Corona has failed to prove the trial court's actions
violated the ADA. The trial court took judicial notice the courthouse was wheelchair accessible, and
Corona failed to prove he could not access the courtroom. Although Corona did provide some
medical records to prove he is a paraplegic, Corona failed to provide the trial court with any evidence
he could not travel to Camp County to attend court proceedings. A public entity is not required to
grant the specific accommodation requested, so long as the accommodation granted is adequate. The
record does not establish the accommodation provided, i.e., a wheelchair accessible courtroom, was
inadequate. Further, the accommodation requested by Corona might fundamentally alter the
proceedings. See McLaughlin v. Pyles, No. 99CA0013, 1999 Ohio App. LEXIS 5556 (Ohio Ct. App.
1999) (not designated for publication) (refusal to allow party to appear by telephone did not violate
ADA). Corona has not shown the trial court abused its discretion in not granting his motion to appear
by telephone.

(5) Corona's Complaint About Discovery Was Not Preserved for Appellate Review

 Corona filed a motion to compel discovery March 1, 2006. According to Corona, Pilgrim's
Pride ignored discovery requests made the prior November, including interrogatories, requests for
disclosure, requests for production, and requests for admissions. Corona did not attempt to secure
a ruling on his motion to compel. At the hearing for summary judgment, Corona complained about
Pilgrim's Pride not responding to his discovery requests. The trial court noted there was no record 
Corona had ever requested a hearing. Corona admitted he had not requested a hearing and stated he
"was under the impression that once you filed a motion that automatically the motion would be
docketed." At the hearing, Corona did not explicitly request a ruling on the motion.

 The Texas Supreme Court has held "the failure to obtain a pretrial ruling on discovery disputes
that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that
conduct." Remington Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993). This is in accord with
the general rule that, as a prerequisite to a complaint for appellate review, the record must show that
the trial court, either expressly or implicitly, ruled on the motion. Tex. R. App. P. 33.1(a)(2)(A). 
Admittedly, there is a significant difference between a hearing on a motion for summary judgment
and a trial. But the failure "to obtain a pre-trial ruling on any discovery dispute existing before
commencement of summary judgment proceedings constitutes a waiver" of any claim for relief. 
White v. Cole, 880 S.W.2d 292, 296 (Tex. App.--Beaumont 1994, writ denied). We agree. Corona
failed to present the motion to compel discovery to the trial court until the summary judgment
hearing. At the hearing, Corona did not request the trial court rule on the motion. Further, Corona
did not file a motion for continuance. See Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647
(Tex. 1996) ("When a party contends that it has not had an adequate opportunity for discovery before
a summary judgment hearing, it must file either an affidavit explaining the need for further discovery
or a verified motion for continuance."). Corona did not preserve error, if any, for our review.

(6) Corona's Complaint About Venue Was Not Preserved for Appellate Review

 Corona filed a motion to transfer venue October 17, 2005, alleging that defending himself in
Camp County, Texas, was too burdensome because he is a paraplegic. According to Corona,
extended stays in a wheelchair could pose a severe health risk because he is subject to decubitus
ulcers. Corona states he filed, in December 2005, a copy of his medical discharge summary. The
only medical discharge summary we have located in the record was attached to his amended motion
to transfer venue, which was filed after the trial court had rendered summary judgment in favor of
Pilgrim's Pride. The medical discharge corroborates Corona's medical condition, but it does not
contain any information establishing Corona was medically unable to appear in Camp County. 

 Corona failed to preserve any error for our review. It was Corona's responsibility to request
a hearing and obtain a ruling on the motion to transfer venue. See Tex. R. Civ. P. 87. Corona waived
any issue concerning venue by not requesting a hearing or ruling. See, e.g., Cliff Jones, Inc. v.
Ledbetter, 896 S.W.2d 417, 418-19 (Tex. App.--Houston [1st Dist.] 1995, no writ). 

 Even if Corona had preserved error, Corona has not shown the trial court erred. The
guaranty agreement contained a forum selection clause establishing Camp County, Texas, as the
appropriate venue and waiving "any objections to the above-referenced jurisdiction and venue." The
Texas Supreme Court has held "enforcement of a forum-selection clause is mandatory, absent a
showing that 'enforcement would be unreasonable and unjust or that the clause was invalid due to
fraud or overreaching.'" Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 793 (Tex.
2005); see In re Automated Collection Techs., 156 S.W.3d 557, 559 (Tex. 2004) (per curiam); In re
AIU Ins. Co., 148 S.W.3d 109, 115 (Tex. 2004) (adopting the standards applied by the United States
Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)). The party opposing
enforcement of a forum selection clause bears the burden of showing enforcement would be
unreasonable or unjust, or that the clause is invalid. Automated Collection Techs., 156 S.W.3d at 559. 
Camp County, Texas, is not "remote alien forum." See AIU Ins. Co., 148 S.W.3d at 114. Even if
Corona had preserved error, he has not shown either that the forum selection clause is unenforceable
or that he was medically unable to attend proceedings in Camp County.

 The trial court did not err in dismissing Corona's counterclaims, and Corona raised no genuine
issue of material fact on Pilgrim's Pride's claims against him. Even if a violation of the ADA would
result in a void judgment, Corona failed to plead such a defense and failed to show that an ADA
violation occurred. Because Corona's affidavit was entirely hearsay, the trial court did not abuse its
discretion in sustaining Pilgrim's Pride's objection to it. Corona failed to preserve any error on his
motions to compel discovery and to change venue. 





 For the reasons stated, we affirm the trial court's judgment. (7)



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 10, 2007

Date Decided: January 18, 2008

1. Corona formed Centex Foods Corporation with business partner Ismael DeLeon.
2. The suit against Centex was severed because Centex declared bankruptcy. 
3. The law is well settled that "[a] party proceeding pro se must comply with all applicable
procedural rules" and is held to the same standards as a licensed attorney. Weaver v. E-Z Mart
Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997, no pet.). "On appeal, as at trial,
the pro se appellant must properly present his or her case." Strange v. Cont'l Cas. Co., 126 S.W.3d
676, 678 (Tex. App.--Dallas 2004, pet. denied). We review and evaluate pro se pleadings with
liberality and patience, but otherwise apply the same standards applicable to pleadings drafted by
lawyers. Foster v. Williams, 74 S.W.3d 200, 202 n.1 (Tex. App.--Texarkana 2002, pet. denied). 
4. We also note Centex had declared bankruptcy. The record does not contain any indication
that the bankruptcy trustee had authorized these counterclaims. Further, Centex had been severed
from this lawsuit at the time the counterclaims were filed.
5. We note Corona claims Pilgrim's Pride deviated from the standard course of dealing between
the parties by not notifying Corona by telephone of the past due invoices or the fact that Centex's
credit limit had been exceeded. Corona, though, presented no evidence to support this allegation. 
"Pleadings do not constitute summary judgment proof." Clear Creek Basin Auth., 589 S.W.2d at
678. Even if there was evidence to support this allegation, Corona has failed to provide this Court
with legal authority establishing this deviation as a defense to his obligations under the guaranty
agreement. See Tex. R. App. P. 38.1.
6. We note Corona alleges the "bankruptcy trustee has offered payment in the form of the
corporation's assets," but fails to provide this Court to a cite in the record in support of this
statement. The record does contain a letter to Pilgrim's Pride where Corona offers to tender the
corporation's assets to satisfy the debt. We will assume, without deciding, that the letter constitutes
summary judgment evidence.
7. Corona also alleges the trial court engaged in ex parte communications with Pilgrim's Pride,
but there is no support in the record for this claim.